Beck J.
1. Insurance power of ‘ special agent. I. The issues presented in this case involve questions as to the liability of defendant by reason of the payments and receipts set out in the petition. jl j. Unless these transactions bind defendant, there can oe no recovery. The acts of the agent of defendant, in' connection with - these payments, are but incidents thereof.
In the consideration of these questions we will find it more convenient, and our labor will be accomplished more speedily, to discuss them in the order suggested by the nature of the case and the issues presented, rather than by following the course pursued in the presentation of the case by counsel.
Our first inquiry relates to the authority of the agent to bind defendant by his acts, as set out in the petition. It is not disputed that the agent was clothed with authority to receive money paid as premiums for the renewal of policies, or as the annual premiums thereon, and sums charged as extra premiums on account of permits to reside in territory falling within the restrictions of the policy. Receipts for annual premiums, signed by the proper officer of defendant, were furnished to him, which he countersigned and delivered upon receiving payments. The form and manner of delivering the receipts, issued on account of premiums for permits, do not so clearly appear. The agent was not empowered to fix or change the rates of annual premiums, nor the premiums for permits,' nor was he allowed to grant and issue these permits for residence in forbidden regions. These duties were discharged by other officers of defendant. There can be no doubt, however, that the agent was authorized to receive money upon applications for permits, and issue receipts therefor, which were not in the nature of a contract allowing the privilege *133 sought, but simply acknowledging the payment of the money for the purpose indicated. The power to receive and receipt for the money upon the application, and in advance of the permit, is an incident of his authority to receive applications for that purpose. His authority to receive premiums generally, including extra premiums, covers this power. The receipt of the extra premium by the agent, upon the application for an extension of the privileges of the policy, and the execution of an acknowledgment thereof, were within the limits of his authority. But these acts of the agent did not, of themselves, create a contract in the nature of a permit. "Without more, no such contract could be established.
The receipt of the agent given for the premium paid on account of the permit, if executed and delivered after the suit was commenced, and after he ceased to be the agent of the company, would not, of itself, bind the defendant. But this fact, if it were established, could not prevent the fact of the payment, and the purposes for which it was made, being proved by other proper evidence. If the money was paid for the purpose of securing the permit, the fact that the receipt therefor was improperly issued by one having no authority so to do, because of the termination of the agency before its execution, will not render inoperative the payment and preclude proper proof thereof.
g_post-da^ tmg permit. II. It will be convenient in this connection to consider the effect of the permit signed by the secretary of the company and dated November 1, 1867. If instrument was issued upoh the application of plaintiff in consequence of the payment of the money to the agent, with the intention of extending the privilege sought thereby, it would clearly operate from the date of its delivery and not from the date it purports to bear. By the act of post-dating an instrument, intended to secure a present right, its effect and operation, in accordance with the intention of the parties thereto, are not destroyed.
*134 The fourth and. fifth instructions given by the court, to which objections are made by defendant, are in harmony with the views we have thus far expressed, and are, therefore, in our opinion, correct expressions of the law.
3. — waiver estoppel: III. By the terms of the policy, residence of the party whose life was insured, south of the 36th degree of north latitude, is forbidden, and the violation of this condition, it is declared, renders the policy void. A forfeiture by reason of the violation of this restriction may be waived, and acts of the defendant inducing plaintiff to believe that the condition was dispensed with, or the forfeiture waived, will be sufficient to establish a waiver. Viele v. Germania Ins. Co., 26 Iowa, 9.
It has been frequently held that the receipt of premiums upon a policy, after the act which otherwise would work a forfeiture, is waiver thereof. North Berwick Co. v. New England F. and M. Ins. Co., 52 Me. 336 ; Viall v. Genessee Mut. Ins. Co., 19 Barb. 440 ; Frost v. Saratoga Mut. Ins. Co., 5 Denio, 154; Insurance Co. v. Stockbower, 26 Pa. St. 199; Wing v. Harvey, 27 Eng. Law and Eq. 140.
A condition in a life policy prohibiting a party, whose life is insured, from going south of a certain degree of latitude, is deemed waived by the knowledge of the officers of the insurance company that he intended to go south of that line. Bevin v. Conn. Life Ins. Co., 23 Conn. 244. So the knowledge of the officers of an insurance company that the party is sick, and the renewal of a policy upon his life, which had expired by non-payment of premiums, is a dispensation of a condition against ill health. Buckbee v. U. S. Ins. and Trust Co., 18 Barb. 541. In support of this point, we refer to Viele v. Germania Ins. Co., supra, and the authorities therein cited.
*135 4_receipt of after forfeiture *134 Did the agent of defendant possess the authority to do the acts which amount to a waiver or dispensation of the *135 conditions of the policy, restricting the deceased to a residence north of the 36th degree of north latitude, a:a<^ declaring that the policy shall be void ^11 ease ^e ^on-payment of the annual premiums when they become due ? There is no difficulty here. It was the duty of the agent to collect the premiums, both annual and for permits to reside in the south. Receipts for the annual premiums were furnished him by the defendant, to be countersigned by him and delivered upon payments being made. These receipts, when delivered, were binding upon the company. He was thus intrusted with powers of considerable latitude, and, so far as receiving payments, and thus continuing or renewing policies, they were quite plenary. The defendant, by intrusting him with the instruments, and power to deliver them, impliedly, as to all dealing with him, clothed him with authority to receive payments, and bound the company by his acts in all cases where it would be proper for the defendant, through any of its officers, so to do. If, by the receipt of premiums in any case, the defendant would thereby waive the conditions of the policy, payment to the agent in such a case would have that effect. The reason is obvious. The waiver results as a consequence of the receipt of the premiums, which operates as an estoppel, precluding denial of the validity of the policy. Viele v. Germania Ins. Co., supra. The agent being authorized to receive the premiums, the waiver follows his act of accepting payment thereof. This rule is just and reasonable in its practical effects. It might often be the source of great wrong to permit the agent to receive the money of those dealing with him, yet deny that his act in receiving it binds his principal. The company would be in a position to receive money without incurring any obligation in return. The receipt of annual premiums will not amount to a dispensation of the conditions or a waiver of forfeiture, on account of a breach thereof, unless the fact of the breach *136 be known, to tbe officers of tbe insurance company, or its agent. A contrary rule would deprive tbe company of tbe power to protect itself from frauds and impositions. Tbe views we have advanced in this connection are substantially expressed in tbe sixth instruction given by tbe court to tbe jury.
B__mutuai knowSageof ruies. IV. Tbe seventh instruction given by tbe court is to tbe effect that, if tbe agent bad no authority to grant perm^s to reside in tbe south, which was known to tbe plaintiff, and she did not act in good faith in applying to or dealing with tbe agent in reference to tbe permit, in that case plaintiff cannot recover in this action. This instruction, which is tbe ground of an objection by defendant, may be considered in connection with tbe eighth given by tbe court, which is substantially as follows: A member of a mutual insurance company is presumed to know tbe rules of tbe company. If plaintiff, in deabng with defendant in her efforts to procure tbe permit, acted upon her own knowledge, she would be bound by tbe rules of tbe company. But if she did not, in fact, possess knowledge of these rules, and applied to tbe agent of defendant for instructions, in order to procure tbe permit, and, follbwing bis instructions, paid tbe money demanded for a renewal of tbe policy and for tbe permit, and was thus left to rest in tbe belief that tbe agent bad full power to act in tbe premises, and that tbe permit for which she bad appbed bad been granted, tbe company is bound by tbe acts of tbe agent. In our opinion tbe principle of these instructions cannot be objected to by defendant.
It may be admitted that tbe members of a mutual insurance company are presumed to have knowledge of tbe articles of incorporation and by-laws of tbe company. It is so ruled in Simeral v. Dubuque Mutual Insurance Co., 18 Iowa, 319. In Cole v. Iowa State Mutual Insurauce Co., 18 Iowa, 425, and other authorities cited by defendant’s *137 counsel, it is said that the holder of a policy' issued by a mutual insurance company is bound to know the rules of the company. But it is not to be understood by use of the word “ rules,” that reference is made to the regulations adopted by the officers of the company in regard to the transaction of business, but rather such rules as enter into the constitution of the company, as provisions of its charter or its by-laws. Rules in the nature of instructions to officers or agents, directing the discharge of their duties, etc., cannot be meant, but rather the rules whereby the liability and rights of members of the company are fixed, which are parts of the laws of the institution. 1 Phillips on Ins., 253 (a); Treadway v. Hamilton Mut. Insurance Co., 29 Conn. 68; Baxter v. Chelsea Mutual Fire Insurance Company, 1 Allen, 291; Hale v. Mechanic Mutual Fire Insurance Company, 6 Gray, 169.
It does not appear that the articles of incorporation or by-laws of defendant restricted the powers of agents or prescribed the duties to be performed by them. Unless it so appears, the rule above stated would not be applicable to this case. In this respect the instructions last noticed, if objectionable, err on the side of defendant.
6_estoppel-acts of agents. The other principle of the instructions are in accord with the law. The defendant cannot be permitted to escape liability from the acts or representations of ail agerLt in the course of its business which he is authorized to transact, whereby a party dealing with it is induced to pay money in the belief that he will receive security in return. The agent of defendant, as we have seen, was empowered to receive payments made to defendant in the course of its business. The plaintiff could well rely upon the representations of the agent that the payment to him was the regular course to pursue in order to obtain the permit required. If the acts of defendant and its agent induced the belief on the part of plaintiff' that the permit was issued upon the pay *138 ment of the money to the agent, defendant is estopped to deny it.
7. Instruction i assumption of fact. V. In the third instruction the jury were informed that “it is conceded that Walsh went south at a time when he was authorized to go” by the policy. This c? «/ x */ is excepted to, on the ground that the fact stated is not shown by the record. How the fact was conceded, the instruction does not state. It may have been orally, in open court, or in argument to the jury, or in other ways that would authorize the court to make the statement. The fact is not inconsistent with the record. The plaintiff, having excepted to the statement of fact made by the court, should be able to contradict it by the record. It does not appear that any attempt was made to call the attention of the court to this statement or to correct it, if, as it is claimed, it was not supported by the facts. It will be observed that it is not an attempt to state the effect of the evidence, but rather the statement of a fact admitted by the parties. We must consider that the court was warranted in making it by an admission of the fact, of which he had proper knowledge.
8. evidence : error without prejudice, VI. A certificate of the State auditor showing the authority of the agent was admitted in evidence against defendant’s objection, based on the ground of ,. , ~ its immateriality. It was not denied that the party named therein was the agent of defendant. Admitting the evidence to be immaterial, we have failed to discover that it did or could have affected prejudicially defendant’s rights. It is, therefore, not an error that requires the reversal of the case.
9. Insurance published rules. VII. Certain circulars and books purporting to have been issued by defendant were admitted in evidence, : defendant objecting, for the reason that it was not shown that plaintiff had knowledge of them, or was influenced by them in her dealing with defendant. This evidence was claimed, for that reason, to be imma *139 terial. "We understand these documents to be in the nature of publications to the world of the rules governing defendant in the transaction of its business, and for that reason would be binding upon it, though not brought to the knowledge of plaintiff. They were therefore admissible in evidence without the prehminary proof which defendant’s counsel insists was necessary.
YIII. The agent, Kidder, was permitted to testify that, at the time he received the extra premium, he treated the payment as conferring permission upon Walsh to reside in the south. This evidence was objected to, because it is the expression of an opinion as to the legal effect of the payment made to him, and because he had not the authority to grant the permit in question, nor to determine what would constitute one. The evidence is not the statement of an opinion, hut of a fact, and the agent’s authority could have no hearing upon it. The issue was presented whether the defendant is estopped by its acts and the acts of its agent, in treating the conditions of the policy as dispensed with, from setting up a breach of these conditions as a defense to the action. The evidence complained of establishes these acts so far as the agent is concerned. In our opinion it was properly admitted.
IX. An officer of defendant testified that, on account of yellow fever prevailing in the south, they would not, at the time, grant permits for residence there. This evidence was properly excluded. It assigns a reason for a general course of business, and does not state facts which would enable the jury to determine the issues in the case, which were whether the conditions of the policy were waived by a special contract, by a permit, or by the acts of the defendant and its agents in treating them as dispensed with. It does not follow that defendant, because generally permits were refused, did not issue one in this case, or waive the condition of the policy requiring it.
X. It is claimed that the verdict is not supported by the *140 evidence. Upon this point there may exist a doubt. We cannot interfere with the verdict unless it appear that it was not the result of a fair and intelligent exercise of the judgment and conscience of the jury. We cannot so regard it.
We have examined all the points made by counsel with the care demanded by the importance of the case, and the ability exhibited in its argument, and are satisfied that the judgment of the district court should be
Affirmed.