THE MUTUAL FIRE INSURANCE COMPANY OF CECIL COUNTY *vs.* MILLER LODGE, INDEPENDENT ORDER OF ODD FELLOWS.

*Mutual Fire insurance company—Policy holder—Payment of interest on Deposit note—When Usage or habit of the Company imposes no obligation—Duty of the Assured to pay Interest on Premium note at the time appointed—Application of Dividends.*

When a party takes out a policy in a mutual insurance company, and the contract is complete, he at once becomes a member, and is bound by the rules and provisions of the charter and by-laws of the company, and he is presumed to have knowledge of them all.

While the charter and by-laws are explicit in requiring payment of the interest on the deposit note, at or before a fixed and definite time, the contract of insurance has reference to the time thus expressly designated, and the member is bound to take notice of it at his peril.

Although there may be a habit or usage of the company to give notice to the members, of the amount of the annual interest, and the time of payment; yet if no obligation to give such notice is created by the charter or by-laws of the company, there is nothing in such habit or usage that could impose such a duty upon the company, with the consequence of making the notice a condition precedent to the right of the company to receive the interest on the premium note, according to the contract of insurance.

The company is under no obligation to give such notice, and assumes no responsibility in giving it. The duty of the assured to pay at the day is the same, whether notice be given or not.

And even if a dividend of profits were declared in favor of the policy holder, unless expressly made applicable to the payment of the annual interest on his premium note, the insurance company would neither be bound nor justified, in the absence of the assent or request of the insured, in so applying the dividend.

APPEAL from the Circuit Court for Harford County.

The case is stated in the opinion of the Court.

*Exception.*—At the trial the plaintiff offered the four following prayers:

1. That by the true construction of the charter of the defendant, the plaintiff was in no default, because of the non-payment at the annual meeting of August 3rd, 1878, of interest on the deposit note given by the plaintiff to the defendant, unless the jury shall find that prior to the said meeting, the board of managers of the defendant had determined that the interest of the company required that interest on the deposit notes, held by it, should be paid for the year beginning August 3rd, 1878, and had also determined the rate of said interest, and that the defendant had given notice to the plaintiff, that payment of interest on said deposit notes was required for said year, beginning August 3rd, 1878, and of the rate of said interest, and that there is no sufficient evidence that such notice was given to the plaintiff.

2. That if the jury find from the evidence, that it had been the uniform custom of defendant to send annually to plaintiff, prior to the time when the interest on its deposit note should become due, a notice stating the rate of interest that would be exacted on said note, and that the board of managers of defendant, at their meeting in May, 1878, directed the secretary of defendant to send notices of the amount required to be paid, as such interest, at the annual meeting of 1878, then the plaintiff had a right to await such notice, and was not in default by reason of the non-payment of the said interest on or before August 3rd, 1878.

3. If the jury shall find from the evidence, that on the 3rd day of August, 1878, and at the time of the fire, there was standing to the credit of the plaintiff, on the books of the defendant, not less than $10.50, as the balance left of

the payments made by the plaintiff, as interest on its deposit note prior thereto, after deducting from said payments the share of said Lodge (plaintiff) in all losses and expenses heretofore accrued, and that said sum of $10.50 was due to the plaintiff for clear profits up to said time, and shall further find, that the amount required by the board of managers of defendant, to be paid as interest on the deposit note of the plaintiff, for the year ending August 3rd, 1878, was $7.50, then the said sum of $10.50 was properly applicable to the discharge of said $7.50, and the policy of insurance of plaintiff was not suspended by the non-payment of said $7.50, otherwise, by the plaintiff.

4. That if the jury shall find that at the time of the fire, which destroyed the property of the plaintiff, as mentioned in the evidence, George E. Haddaway was the local agent of the defendant for Talbot County, and was present at said fire, and wrote to the secretary of defendant, the letters of October 3rd and 4th, 1878, given as evidence by the plaintiff, and that said letters were in due course received by the said secretary, and that thereafter on the 11th December, 1878, the witness, Fountain, in company with another, as a committee, by the direction of the plaintiff, and as its representatives, went to the office of the defendant at Elkton, to make a demand of payment of the insurance money due under the policy offered in evidence, and then, and there, made of the president and secretary and treasurer, demand of said payment, and left with them the formal proof of loss given in evidence by the plaintiff, and that in answer to the said demand, the president, or secretary and treasurer, in the presence of the others, said that they were very sorry that the plaintiff had, by failure to pay the interest on its deposit note, allowed the policy to lapse, but further directed said committee to go home and prepare a full statement of all the facts in reference to their case, and send it to the office of the defendant, and that said statement, after it was re-

ceived, should be laid before the board of managers at its next meeting; and that no mention or objection was made by said president, or secretary and treasurer, that notice had not been given of the claim of the plaintiff, within thirty days ; and that accordingly, said committee went to Easton and reported the result of said interview to said Lodge, which thereupon appointed a committee of three persons to prepare the statement suggested; and that said committee prepared and sent to the defendant the written communication, dated December 20th, 1878, offered in evidence, and received the written reply thereto, dated January 2nd, 1879, offered in evidence; and that subsequently, at the meeting of the said board of managers in February, 1879, the said communication of December 20th, 1878, and the reply thereto, of January 2nd, 1879, and the claim of the plaintiff, as presented on the 11th of December, 1878, was laid before the said board by Mr. Ellis, the secretary and treasurer, and the board thereupon, upon full consideration of the matters submitted to it, took the proceedings recorded in the book of proceedings, offered in evidence, under date of February 18th, 1879, then the jury may find from the foregoing, in connection with all the other evidence in the case, a waiver by the defendant, of the notice mentioned in the 8th section of the charter of the defendant.

The defendant offered the following prayers:

1. That if the jury find that the defendant (company) was incorporated under the charter offered in evidence, with the by-laws offered in evidence, and that the plaintiff was a member of said company, and accepted the policy of insurance offered in evidence, and gave the defendant the promissory note therein mentioned ; and further find, that for the purpose of raising a contingent fund for the payment of losses and other necessary expenses, said company exacted of its members interest on their promissory notes at the rate of five per cent. per annum, which in the

Mutual Fire Ins. Co. of Cecil Co. *vs.* Miller Lodge.

judgment of the managers of said company was required to be paid on or before the day of the annual meeting of said company in August, 1878, in advance, for the then current year, of which the plaintiff had notice, and that plaintiff neglected and failed to pay said interest on or before said day of the annual meeting of said company in August, 1878, that then the plaintiff is not entitled to recover for any loss it may have suffered after said day and while said interest remained unpaid.

2. That there is evidence before the jury upon which they may find, that plaintiff, before the day of the annual meeting of the insurance company in August, 1878, knew or had notice, that interest on the premium note mentioned in the policy of insurance was due and payable on or before said day; and if the jury do so find, plaintiff is not entitled to recover for any loss that occurred after said day, and while said interest remained unpaid.

3. If the jury find that F. A. Ellis, the secretary of the insurance company, on or about the — day of July, in the year 1878, enclosed in an envelope a notice like the one offered in evidence, directed to plaintiff, and sent the same by mail to William H. Councell, who was a member of said Miller Lodge, and resided in the same town, within a few steps of the hall of said Lodge, and that said Councell received the said notice in due course of mail, that these facts, if found by the jury, constitute a sufficient service of said notice.

4. That if the jury find that the fire occurred on the first of October, 1878, and that plaintiff gave no notice thereof, and made no claim therefor until the 11th day of December, in the same year, that these are facts, together with the other evidence in the case, from which the jury may find that plaintiff had notice, that the interest on its premium note was required to be paid on the day of the annual meeting of the members of defendant (company) in August, 1878, or that plaintiff waived such notice.

5. That there is no evidence of the payment by plaintiff of any interest in or for the year 1878, on the premium note mentioned in the policy of insurance, as the consideration on which it was issued.

6. That if the jury find from the evidence, that the fire and loss thereby occasioned, occurred on the 1st day of October, 1878, and that plaintiff gave no notice thereof to defendant, and made no claim therefor until the 11th day of December, in the same year, that plaintiff is not entitled to recover in this action, unless the jury find that defendant waived the notice of loss required by its charter.

7. That there is no legal evidence in the case from which the jury can find that the defendant waived the notice of loss required by the eighth section of the defendant's charter, and that upon the issue joined upon the defendant's ninth plea, the jury must find for the defendant.

The Court (WATTERS, J.,) granted the first and fourth prayers of the plaintiff, and rejected its second and third; and granted the sixth prayer of the defendant, and refused to grant its other prayers. The defendant excepted.

The jury rendered a verdict for the plaintiff, and judgment was entered accordingly. The defendant appealed.

The cause was argued before BARTOL, C. J., ALVEY, IRVING and RITCHIE, J.

*Wm. J. Jones,* and *Henry W. Archer,* for the appellant.

*Bernard Carter,* and *Henry D. Farnandis,* for the appellee.

ALVEY, J., delivered the opinion of the Court.

This action was brought by the appellee against the appellants, on a policy of insurance against loss by fire; and recovery was had for the amount of the insurance.

By the prayers offered in the Court below for instruction to the jury, two principal questions were presented;

1st. whether the insurance to the appellee was suspended, prior to and at the time of the occurrence of the loss by fire, by reason of default by the appellee in making the annual payment of interest on the premium or deposit note, according to the requirement of the policy and the express terms of the charter and by-laws of the appellants; and, 2ndly, whether, if the policy was not so suspended, the right of recovery was lost to the appellee by reason of failure to give the appellants the required notice of the loss, within the time prescribed.

The appellants are a mutual insurance company, chartered by the Act of 1845, ch. 249. Both by the charter and the by-laws of the company, the first Saturday of August in each and every year is the day fixed upon which the members of the company are required to convene, at some convenient place to be previously fixed, for the purpose of electing managers, and for the transaction of any other business that may be found necessary. Of this meeting previous notice, by publication, is required to be given, for at least twenty days before the day of meeting. It is not pretended that the regular annual August meeting for the year 1878 was not held, or that due notice thereof was not given. By the terms of the charter (sec. 5,) all such persons as are insured in the company "shall be deemed and taken as members thereof, during the period they shall remain so insured, and no longer." And by the 6th section; all parties insuring are required to deposit with the secretary of the company, his or her promissory note, payable in part or in whole, at any time when the managers shall deem the same requisite for the payment of losses or damage by fire, or for such incidental expenses as may be necessary for the transaction of the business of the company, for a sum equal to one and a half per cent., or, by the 2nd section of the Act of 1846, ch. 200, at higher rates if deemed proper, on the amount of his or her property insured; and

shall thereupon receive a policy, etc., to be signed by the officers of the company and by the party insured. It further provides, that for the purpose of raising a contingent fund for the payment of losses or other necessary expenses, it shall be lawful for the company to exact of its members, interest at a rate not exceeding six per cent. per annum, on such premium or deposit note, as long as in the judgment of the managers the interest of the company may require it,—and "*such interest shall be paid to the treasurer, on the day of each annual meeting;* and every payment of interest so made, shall be entered to the credit of the proper person on the books of the corporation, and be applicable, as far as the same may go, to the liability of the individual with the corporation, and of the corporation for loss or damage by fire, or other legal and proper charges." The 9th and 10th sections of the charter provide for levying and collecting assessments upon the premium notes of the members to pay losses; and by the 11th section it is provided that if any member of the corporation *shall neglect or refuse* to pay the interest on his deposit note, *on the day of the annual meeting of the members,* as provided by the 6th section of the charter, such member shall thereby be debarred from any benefit or advantage from his or her insurance, until the same is paid, and in case any loss or damage by fire is sustained by such delinquent member, between the time said interest *is payable* and *the payment thereof,* such loss or damage shall not be remunerated by the said company, but the operation and effect of said delinquent member's policy shall be *suspended* until all arrears of interest are duly paid." By the 11th by-law of the company, it is provided that "all interest on premium notes or obligations shall be paid annually, in advance, and the rule shall be *peremptory* that said payment *must be made on or before the day of the annual meeting."* There is no provision, either in the charter or the by-laws of the

appellants, requiring *special* notice to be given the members of the amount of interest to be paid on the premium note, and the time when payable; though it is otherwise in respect to special assessments upon such premium notes.

The policy was issued by the appellants to the appellee on the first day of August, 1863, for three thousand dollars insurance on the Odd Fellows' Hall, at Easton, Talbot county, Maryland; the premium note being $150. The interest on this premium note was regularly paid, until that due for the year ending on the first Saturday of August, 1878. The interest due on the last mentioned day was not paid, and it remained unpaid at the time of the loss by fire, which occurred on the morning of the first of October, 1878; and, for aught that appears, it never has, to this day, been paid or tendered. The policy expressly declares, that it was made and accepted subject to, and upon the terms and conditions mentioned in the charter and by-laws of the appellants; and the principle is an established one, that when a party takes out a policy in a mutual insurance company, and the contract is complete, he at once becomes a member, and is bound by the rules and provisions of the charter and by-laws of the company, and he is presumed to have knowledge of them all. *Mitchell vs. The Lycoming Mut. Ins. Co.,* 51 *Penn. St.,* 402; *Simeral vs. Dubuque Mut. Fire Ins. Co.,* 18 *Iowa,* 319; *Coles vs. Iowa State Mut. Ins. Co., Id.,* 425; *Walsh vs. Ætna Life Ins. Co.,* 30 *Iowa,* 133; *May on Ins. (2nd Ed.) sec.* 552. We do not understand this proposition to be denied.

But it is contended for the appellee that, by the true construction of the charter of the appellants, before the insured could be considered as in default for the non-payment of interest on its deposit note at any particular annual meeting, the board of managers must have determined what rate of interest the needs of the company

required, and that notice of such determination and demand of payment should have been given to the insured prior to such annual meeting, in order to put it in default and to suspend the operation of the policy. And this appears to have been the view taken by the Court below, and the jury were so instructed. But, upon careful consideration of the provisions of the charter and by-laws of the appellants, this Court is constrained to adopt a different conclusion.

As will be observed, both the charter and by-laws are explicit in requiring payment of the interest on the deposit note at or before a fixed and definite time. The contract of insurance has reference to the time thus expressly designated, and the member is bound to take notice of it at his peril. There is nothing in either the charter or the by-laws that requires, or that in any way points to the construction, that notice should be given as a condition precedent to the right of the company to receive the annual interest on the premium notes. If such had been the intention, it would, doubtless, have been expressed. Notice by publication was required of the annual meeting of the members on the first Saturday of August; but as to any separate notice in regard to the payment of interest on the premium notes, we find no warrant in the terms of the charter or by-laws for saying that it was required. The day of the annual election of managers was fixed as the day of payment, and as all the members of the company were called together on that day, it was both convenient and appropriate that that day should be the time when the interest should be due and payable ; as each and every member then would have an opportunity of being informed of the operation and requirements of the company, and of the amount or rate of interest that he would be liable to pay.

But a habit or usage of the company to give notice to the members, of the amount of the annual interest and

the time of payment, has been set up and relied on by the appellee, as showing the understanding of the company and those connected with it, as to what was required of the latter, in order to fix the liability of its members for the annual interest on their premium notes. And it is contended that there was no default committed, and, consequently, that there was no suspension of the operation of the policy, by reason of the failure to pay the annual interest, because such notice was not given to the appellee in respect of the interest due in August, 1878. But to this contention we cannot accede.

In order to make the contention good, it must be shown that there was an obligation on the part of the company to give the notice, and that the giving of such notice was a condition precedent to the right of the company to receive the interest on the premium note, according to the contract of insurance. But, as we have seen, this obligation is not created by the charter or by-laws of the company, and we think it clear that there is nothing in the habit or usage relied on that could impose such a duty upon the company, with such consequence of failure to perform it, as that contended for by the appellee. For if there was failure to give the notice, as contended, for payment at the particular day designated in the charter, the consequence would be, that the company would have to carry the risk for the ensuing year, without receipt of interest, according to the terms of the contract, or the means of compelling its payment, as provided by the charter and by-laws. This could never have been the design of the members of the company; and if it were declared that such duty was, by any means, imposed upon the company, it would most likely tend seriously to embarrass its operations.

In the recent case of *Thompson vs. The Knickerbocker Life Ins. Co.*, 104 *U. S.*, 252, a similar question was presented; and in that case, it was held by the Supreme

Court of the United States, that an insurance company is not bound to send notices to the insured of the maturity of premiums, and that the failure of the company to send such notice does not excuse the insured from the consequences of failure to pay the premium at the time designated in the contract for payment, though it may have been the practice of the company to send such notices. That where the contract fixes the time for payment, as in this case, the Court held that the insured was bound to know, at his peril, when his premium was due and payable.

In considering the question the Court said: "The third replication sets up a usage, on the part of the insurance company, of giving notice of the day of payment, and the reliance of the assured upon having such notice. This is no excuse for non-payment. The assured knew, or was bound to know, when his premium became due. The case of *Insurance Company vs. Eggleston*, 96 *U. S.*, 572, is cited in support of this replication. But, in that case, the customary notice relied on was a notice designating the agent to whom payment was to be made, without which the assured could not make it, though he had the money ready. As soon as he ascertained the proper agent he tendered payment in due form. It is obvious that the present case is very different from that. The reason why the insurance company gives notice to its members of the time of payment of premiums is to aid their memory and to stimulate them to prompt payment. The company is under no obligation to give such notice, and assumes no responsibility by giving it. The duty of the assured to pay at the day is the same, whether notice be given or not. Banks often give notice to their customers of the approaching maturity of their promissory notes or bills of exchange; but they are not obliged to give such notice, and their neglect to do it would furnish no excuse for non-payment at the day."

In this case, as matter of fact, the appellee did know of the time when the interest on the premium note was payable, and hence there was no surprise produced in the failure to receive the notice, either as to the time of payment, or the consequences of non-payment at the day. For Mr. Graham, the treasurer of the appellee, whose duty it was to pay the interest, and who was examined as a witness for the Lodge, expressly admits, that he had the general knowledge that the payment of the annual premium was due on the first Saturday in August annually; and it was his impression, he says, that the policy expired unless the premium was paid when due; but that he had nothing specially to call his attention to the matter during the months referred to.

But, to avoid the effect of non-payment of the annual interest on the premium note when due, there is still another position assumed by the appellee, and that is, that of the profits that had previously accrued upon the policy held by the appellee, there was an amount to its credit on the books of the appellants more than sufficient to pay the annual interest due on the first Saturday of August, 1878; and it is contended that such annual interest on the note should be considered as paid from the amount so remaining to the credit of the appellee. This proposition was made to the Court below and was rejected by it; and in so doing we think the Court was entirely correct.

By the 11th by-law of the company, it is provided that "the profits accruing on each policy shall be calculated annually, and carried to the credit of the party insured thereby." And by the 16th section of the charter, it is provided that "at every *tenth* annual meeting, it shall and may be lawful for the said board of managers to declare a dividend of the profits of the concern, if any, upon such basis as may be equal, according to the respective contributions of the several members thereto, and of

such an amount as shall meet the approbation of two-thirds of the members of the board, and of two-thirds of the members of the said company present, at such *tenth* annual meeting."

At the August meeting of 1874, such dividend of profits was declared, and scrip of the company issued therefor, with interest coupons attached. The certificate was to be held by the insured, subject to future losses of the company, and to be cancelled, should losses require the use of the fund upon which it was issued. The annual interest upon the certificate issued to the appellee was only 87 cents. No subsequent dividend of profits has been declared, and, of course, there could be no claim to have any part of such profits applied to the payment of the annual interest on the premium note. Until the dividend is declared there is nothing due the policy holder that he can control and apply to the payment of his debts. But even if such dividend had been declared, unless expressly made applicable to the payment of the annual interest on the premium note of the policy holder, the company would neither be bound nor justified, in the absence of the assent or request of the insured, in so applying the dividend. This point was expressly ruled in the recent case of *Wheeler vs. Conn. Mutual Life Ins. Co.,* 82 *N. Y.,* 543. In that case, as in the present, the position was taken, that in order to avoid a forfeiture for non-payment of premium, the company should have applied unpaid dividends made to the insured; but the Court held, that when the premiums are not paid, the insurer is not bound, without demand or direction of the insured, to apply the dividends standing to the credit of the policy holder, to the payment of premiums due:

Entertaining these views in regard to the first question presented, we think the Court below was in error in granting the first prayer offered by the appellee; and consequently, the judgment must be reversed. The second

question presented on this appeal, and which was fully argued, it becomes unnecessary to decide. And as we can perceive no ground upon which the appellee could be entitled to recover, the judgment will be reversed without the award of a new trial.

*Judgment reversed.*

(Decided 11th July, 1882.)

