CECIL M. KIMBRO, Appellee, v. THE NEW YORK LIFE INSURANCE COMPANY, Appellant.

**Insurance:** REPRESENTATIONS OF AGENT: ESTOPPEL. An insurance
1  company is bound by the representations of its authorized
agent who receives and forwards an application and thereafter
notifies the insured that the application has been approved
and the policy forwarded to him for delivery; and upon the
death of the insured, prior to any knowledge to the contrary and before maturity of a note given for the premium,
the company is estopped to deny the contract and plead a
counter proposition sent the agent to be submitted to the insured.

**Payment of premium to agent.** Where it is the common practice
2  known to the company for an insurance agent to accept notes
for the first premium payable to himself, and to stand responsible to the company therefor, the transaction amounts
to payment of the premium as between the insured and insurer.

*Appeal from Linn District Court.*— HON. J. H. PRESTON,
Judge.

FRIDAY, SEPTEMBER 21, 1906.

Rehearing denied Thursday, April 11, 1907.

ACTION at law upon a policy of life insurance.   Judgment for plaintiff, and defendant appeals.   *Affirmed.*

*J. H. McIntosh* and *Smith & Smith,* for appellant.

*Rickel, Crocker & Tourtellot,* for appellee.

WEAVER, J.—On December 10, 1903, William F. Kimbro, a resident of Cedar Rapids, Iowa, made application to the defendant for a policy of insurance upon his life in the sum of $2,000.   The application was made through T. A.

Haynes, local agent of the defendant at Cedar Rapids, with whom was associated in this transaction Charles E. Baker, who is styled in the record as defendant's general district agent at the same place. These agents reported their business to the defendant through its branch office located at Des Moines. The policy applied for was of a form or class known as an "Accumulation Policy." On or about the same time Kimbro was examined by the company's physician at Cedar Rapids, who approved him as a desirable risk, and this report with the application was forwarded through the Des Moines branch to the office of the defendant in New York. Moved apparently by something suggested in the application or medical examiner's report, the home office withheld immediate action and wrote to the medical examiner asking him to make closer inquiry as to Kimbro's habits with respect to the use of intoxicants. After some delay the physician reported that at an earlier period in his life the applicant had been somewhat intemperate, but appeared to have abandoned all excess in that direction. The defendant also caused certain inspectors in its service to examine into the applicant's habits and report their findings. Finally on February 2, 1904, the officers in charge of the home office decided not to issue the policy for which application had been made, but executed another form of contract known as an "Adjustable Accumulation Policy," insuring the life of Kimbro for $2,000, subject to the condition, that, if he died within the period of sixteen years, the limit of the company's liability to his beneficiary should be $1,228.44 with a return of the premiums paid on the policy. This policy executed and signed in due form was forwarded by mail to the agent Haynes, calling his attention to the change and directing him to submit it to Kimbro with proper explanations for his acceptance, if found satisfactory. On receipt of the policy Haynes wrote to Kimbro as follows: "Cedar Rapids, Iowa, February 5, 1904. Mr. William Kimbro, City — Dear Sir: I am pleased to advise you that your

policy arrived this morning. I will call, however, this pay day and deliver it to you. Kindly arrange to have the amount of your first note ready, $13.03, and oblige. Yours truly, T. A. Haynes. P. S. I was afraid for a little while, owing to a great deal of inspection being made, that you might be rejected, but am pleased to say the policy is here."

It should be said in this connection that at the time of making his application Kimbro made and delivered to the agent his promissory notes for the first half year's premium, which by the terms of the policy was payable in quarterly installments. The first note was made payable February 18, 1904, which was the day on which Kimbro expected to draw or receive his wages for the previous month. On Monday, February 8, 1904, Kimbro again left home on his trip without seeing or having any other communication with Haynes, and on the evening of the same or following day returned sick. Soon thereafter he was taken to the hospital, where he died on February 25, 1904. The malady from which he died was diagnosed as typhoid fever. On February 22, 1904, the defendant's branch office in Des Moines, learning of the situation with respect to the risk, telegraphed Haynes to return the policy and later sent notice of Kimbro's death to the home office in New York, which replied giving directions to have Haynes mark the premium notes as canceled and return them to Kimbro's administrator. In obedience to this direction, and following the form of communication prepared and sent to him from the company's office, Haynes wrote to the widow of Kimbro, as follows: " Cedar Rapids, Iowa, March 5th, 1904. Mrs. Cecil M. Kimbro, As Administratrix of the Estate of William F. Kimbro, Deceased, No. 422 6th Avenue E. Cedar Rapids, Iowa — Dear Madam: Under date of December 16th, 1903, William F. Kimbro late of Cedar Rapids, Iowa, signed an application for insurance in the New York Life Insurance Company, and thereafter gave me, as the agent

who took said application, the inclosed notes on account of the first premium. The company declined the application, and so I return herewith the notes for cancellation. Yours truly, [Signed] T. A. Haynes." Prior to this, however, and before the death of Kimbro, his wife, the beneficiary in the policy, went to Haynes and tendered the amount of the premium and demanded a delivery of the policy, which circumstance the agent reported to the company through its cashier for Iowa by letter, as follows:

Agency at Cedar Rapids, Iowa, Feb. 24th, 1904. Mr. A. A. DeCelle, Des Moines, Iowa.— Dear Sir: Re No. 2,184,-615 — W. F. Kimbro. This party is still in the hospital here, sick of typhoid, and last report is to the effect that he is getting along very nicely, but there are so many different complications liable to set in that one never can tell which way the tide will turn. Mr. Kimbro's wife was in yesterday and tendered me the money for his notes, but I told her that the cashier at Des Moines had requested me to return the policy to him, and that you had written to the company, and would advise me soon whether I could deliver the policy to her husband or not. She said she could not understand why I could not deliver the policy to her, as her husband had told her to pay the money to me and get the policy. I endeavored to make clear to her what kind of a policy the company had issued on her husband's life, and told her that, as soon as I heard again from you, I would call and see her. I sincerely trust that Mr. Kimbro will get well, and that no complications will arise in connection with this policy, as it would certainly cause trouble if the insured should die and the company should not pay the claim, inasmuch as notes were given in full settlement of the first year's premium. The insuring public thoroughly understands that a New York Life policy is incontestable from date of issue, and I advised him when the policy arrived. Yours truly, T. A. Haynes.

There is some question raised in argument as to the fact and sufficiency of this tender; but if a tender was essential to plaintiff's right of recovery, which we do not decide, the evidence is clearly sufficient to sustain the judgment of

the trial court in this respect. The company denying that an insurance had ever been effected upon Kimbro's life, and refusing to adjust or pay the loss occasioned by his death, this action at law was instituted on May 19, 1904. By the first count of her petition plaintiff declares upon a contract or agreement of insurance upon the life of Cecil M. Kimbro for the sum of $2,000, on the terms and plan usually embodied in the company's so-called accumulation policy. By another count of the petition the issuance of an adjustable accumulation policy is alleged, and that the delivery and acceptance thereof by Kimbro was prevented by the fraud of the company's agents and asks to recover upon said policy as if it had been in fact delivered. By a third count, the plaintiff seeks to recover damages on account of the alleged fraud of the defendant's agents in depriving her of the insurance which otherwise would have been hers. As the last two grounds of recovery seem not to have been recognized or sustained by the trial court, and plaintiff has not appealed, we shall not again refer to them. The defendant answers in denial. It also avers that the notes given by Kimbro for the premium upon the policy applied for by him were the property of the agent Haynes, and not of the company. It further alleges that the application made by Kimbro was disapproved, and no policy ever issued thereon, but another and different policy was prepared and sent to Haynes with authority to deliver it only on condition that said applicant sign and deliver to said agent a written request for such substitution in the following form:

New York Life Insurance Company, 346 Broadway, New York City. I hereby request, as an amendment to my application, dated the 16th day of December, 1903, that the insurance under any policy issued thereon shall take effect as of the 2d day of February, 1904, instead of on the date of said application, as provided herein, and I agree that the insurance year, the accumulation period and the loan and nonforfeiture provisions of said policy shall all relate back

to the date on which the insurance takes effect. Witness ——. Forwarded from Iowa Branch Office, ——, 190—, ——, Cashier.

Exhibit H. Name —— Kimbro ——. No. 2,184,615. Division of Policy Issues: New York Life Insurance Company, 346 & 348 Broadway, New York. The New York Life Insurance Company will please accept the following answers in lieu of the answers to the corresponding questions in my application for insurance dated the 16th day of December, 1903. Question No. ——. I desire a policy on the ordinary life adjustable accumulation policy plan, as set forth in the policy form of the company (with terminating options only), and I select the 20 year accumulation period. Question No. ——. a No. —— b (Should) remains unanswered. And I hereby agree that the above answers shall form a part of my said application for insurance, and I hereby renew and confirm my agreement therein. Dated ——, 190—. Witness: ——, Applicant.

This instruction, it is alleged, was never carried out by the agent, nor did Kimbro ever consent to receive or accept said substituted policy, and no contract of insurance was ever consummated or agreed upon. It is further alleged that Haynes had no authority to accept the notes of the applicant for the premium upon the policy. Replying to this answer the plaintiff alleges that the company is estopped by the acts of its officers and agents, as hereinbefore related, to deny the existence of said contract of insurance or its liability thereon. By agreement of parties the cause was tried to the court without a jury, and, judgment being entered for the plaintiff, the defendant appeals.

It is true, as argued by the appellant, that an application for insurance is not a contract, but rather an offer or tender of terms to be submitted for the consideration of the company to which it is addressed. It is equally true that, upon a rejection of such offer and the submission of a counter proposition by the company, the latter does not become a contract until accepted by the applicant; but this concession is by

1. INSURANCE: representations of agent: estoppel.

no means decisive of the sufficiency of the defense in the case at bar. If plaintiff's right of recovery was based on the " so-called adjustable accumulating policy " sent by the appellant to Haynes to be tendered to Kimbro, it would come fairly within the rule approved in *Stevens v. Insurance Co.,* 87 Iowa, 283, and *Mutual Ins. Co. v. Young,* 23 Wall. 85 (23 L. Ed. 152), and the judgment below would have to be reversed. Such in fact was the effect of the action of the district court upon the second and third counts of the petition, and, as already suggested, there being no appeal by the plaintiff, we have left to consider whether there is sufficient showing of a contract of insurance upon the basis of Kimbro's application, or, what is the same thing, whether the appellant is estopped to deny the making of such contract. Considered from this point of view, we find ourselves in harmony with the conclusion reached by the trial court. It is true, as already said, that a mere application for insurance cannot be given the effect of a contract; but it is a proposal or offer to take insurance, and, if there is any evidence on which the trial court could find as a fact or as conclusion of law that such offer was accepted, then we must treat the applicant as insured upon the terms and conditions of the application. The issuance and manual delivery of a written policy is not ordinarily essential to a contract of insurance. *Preferred Acc. Ins. Co. v. Stone,* 61 Kan. 48 (58 Pac. 986); *Int. Trust Co. v. Ins. Co.,* 71 Fed. 81 (17 C. C. A. 608); *Tayloe v. Ins. Co.,* 9 How. 390 (13 L. Ed. 187); *Schultz v. Ins. Co.* (C. C.), 77 Fed. 375; *Sheldon v. Ins. Co.,* 25 Conn. 207 (65 Am. Dec. 565).

The appellant dealt with the applicant through Payne or Baker, its agent at Cedar Rapids. That agent was its representative, not only to receive and forward the application, but was also its representative expressly authorized to complete the negotiations and deliver the policy which the appellant prepared and returned for the applicant's acceptance. He was the only medium through whom the business

between the contracting parties was carried on. Within the scope of that employment, his hand was the appellant's hand, his voice was its voice, and his promises and assurances were the promises and assurances of his principal, notwithstanding any undisclosed instructions or limitations existing in his contract of employment. He was authorized and empowered to communicate to Kimbro the company's action upon his application, and under the elementary rule just referred to his representations and statements within the line of that duty were binding upon his principal. Now, what was the information conveyed by this agent to the applicant. He says: "I am pleased to advise you that your policy arrived this morning. . . . I was afraid for a little time, owing to a great deal of inspection being made, that it might be that you would be rejected, but am pleased to say that the policy is here." It is idle to argue that by this language the agent did not intend to assure Kimbro that his application had been accepted, but was referring to a substituted policy, which required a modification or change in his application. When he told the applicant that his policy had arrived, it was the unmistakable equivalent of a statement that the policy applied for had been issued to him, and when he emphasized that statement by further saying that he had feared for a time that the application might be rejected, but was pleased to be able to say the policy was now at hand, it was the strongest possible assurance that such application had not been rejected, but had been approved and policy issued accordingly. Moreover, instead of any suggestion that in order to complete the contract it was necessary for Kimbro to amend his application or take any other or further action, the agent simply informed him that, after the approaching pay day, he would himself call around, turn over the policy, and requested Kimbro to be prepared to take up his first note given for the premium. This was an assurance on which the appli-

cant had a right to rely and rendered it unnecessary for him to call upon or make further inquiry of the agent.

Under such circumstances we think he had the right to rest upon the conclusion that he was insured according to the terms of his application, and that the company cannot be heard to say that no contract of insurance had ever been effected. It is a well-settled rule of law that a principal will not be heard to deny the truth of the representations of his agent with respect to the matter which is the subject of such agency, and the fact that the agency is of a limited or special character does not prevent the application of this rule. Speaking of the representations of the soliciting agent under circumstances quite similar in some respects to those in the case at bar, the Kansas court, in *Accident Society v. Stone, supra,* says: " It is argued that these statements were by an agent whose powers were limited and special, and that the company was not bound by them. The case in this particular is not within the rule of the decisions cited by counsel. The local agent did not assume to waive anything in disregard of, or even within, the limitations of his authority. . . . As before stated, it was the custom of the company to deliver policies to accepted applicants through its local agents, and through them to return premiums paid upon applications which it rejected. This qualified the agent to impart information in respect to those things which were to be done by him. The giving of information in respect to a thing which, when to be done, the company would intrust to him to do, came within the scope of his authority." The appellant intrusted to Haynes the closing of the contract with Kimbro, and his contract and representations in respect thereto cannot be repudiated by it after a loss has occurred. In *International Trust Co. v. Insurance Co., supra,* the Circuit Court of Appeals held the company bound by the representation of a bookkeeper in the office of the company's agent that a renewal of an outstanding policy had been granted. See, also,

*Walsh v. Insurance Co.,* 30 Iowa, 133. Counsel argue that, in order to estop the company from repudiating the act of its agent, it must be alleged and shown that the applicant would have procured other insurance had the agent told him the truth. But, as suggested by the Kansas court, *supra,* the rule here appealed to is not applicable to the facts before us. While the obligation of a principal because of the act of an agent may under some circumstances and in a limited sense be said to rest upon the doctrine of estoppel, it is not true that the strict rules governing estoppels in general are in all cases controlling upon the effect to be given to an agent's act. If, for instance, an agent be intrusted with authority to speak for his principal in concluding a contract between that principal and a third person, what such agent says or does within the apparent scope of his authority binds his principal, not simply because the person relying thereon loses an opportunity to make an equally advantageous contract elsewhere, but because for the purposes of that transaction the act of the agent is the act of the principal, and an agreement thus concluded upon sufficient consideration is enforceable as a valid contract. But, even if we were to consider this case as being governed by the law of estoppel, we find no reason to disturb the judgment of the trial court. The question whether Kimbro would in fact have procured other insurance had he been notified of a rejection of his application is not an essential consideration. It would be sufficient to estop the company if he relied upon the representation of the agent and in such reliance died, or by reason of intervening sickness became incapable of securing other insurance. That Kimbro had the right to rely upon the agent's assurance no one can well question, and that he did rely upon it the facts sufficiently demonstrate. The statement by the agent was, in substance, that the policy applied for (which was to date from the date of the application) had been issued, and that he himself would bring it to Kimbro after " pay day," which

was February 18, 1904, and collect the amount of the first premium note. This, as we have before noted, left nothing for Kimbro to do save to wait the arrival of pay day and then receive the written evidence of the insurance, which he was informed had been effected. He did wait, and while waiting was attacked by a sickness which resulted fatally. There is no provision in the application or in the policy applied for which makes the insurance conditional upon the actual receipt of the written policy by the applicant while in good health; nor is there any other condition which avoids the operation of the ordinary rule that a proposal or offer by one party, followed by a duly communicated acceptance by the other party, constitutes a contract, even though the contemplated written evidence thereof has never been executed. To relieve the company from liability under such circumstances would not serve to promote fair dealing or exercise of good faith in the business of life insurance.

It is next urged upon our attention that in any event the advance premium which was payable in quarterly installments had not been paid, and therefore under the terms of the policy applied for the insurance never became effective. No general rule adopted by an insurance company as to the prepayment of premiums can take away its power to waive or ignore such requirement and to bind itself by a contract without such payment. Nor does such provision in any manner restrict its right to accept a promissory note as such payment. The testimony on part of appellant that its agents were not authorized to accept notes for premiums, and that the notes in the present case were a matter between the agent and the applicant only, must, in view of other undisputed facts, be taken with some grain of allowance. It appears without controversy that the agent taking them inclosed the notes with the application and returned them to the superior officer or agent to whom he was immediately responsible. With the application and the notes taken in

2. Payment of premium to agent.

violation of its ostensible rule all before it, the appellant made no objection to this assumption of authority by its agent, but proceeded to consider and pass upon the merits of the application.   So far as the record shows, the company continued to hold these notes until it discovered that a loss was impending, when by its general solicitor it wrote to its cashier in Des Moines, saying: "Kindly have the agent indorse the note as follows: 'The New York Life Insurance Company declined the application for insurance on account of which this note was given, and therefore I now here return the note for cancellation. T. A. Haynes.' After the agent has written the above on the back of the note and signed his name to it, then have him forward the note by registered mail to the administrator of Kimbro's estate, with the following letter: 'Mr. ———, Administrator of the Estate of William F. Kimbro, Deceased, Cedar Rapids, Iowa.— Dear Sir: Under date of December 16, 1903, William F. Kimbro, late of Cedar Rapids, Iowa, signed an application for insurance in the New York Life Insurance Company, and thereafter gave me, as the agent who took said application, the inclosed note on account of the first premium.   The company declined the application, and so I return herewith the note for cancellation.' Your careful and prompt attention to this will greatly oblige. Yours truly, General Solicitor."   This assumption of authority over the notes and the reason assigned for ordering them returned to the administrator are wholly inconsistent with the claim now made that they were taken without its cognizance or consent.

The evidence also tends to show that the first year's premium or a large part thereof was due to the agent himself under the terms of his employment, and, so long as he properly charged the same to himself in his agency account, the taking of notes therefor was treated by the company with indifference.   When freed from all obscurity, the testimony on the part of the appellants on this branch of the

case means nothing more than that agents were forbidden to take notes payable to the company for the first year's premium upon policies issued or applied for; but it was a common practice known to and approved by the company for agents to take such notes payable to themselves, and charge themselves therewith in their agency accounts, the company holding the agents responsible as for a cash collection. Such a transaction is a payment of the premium as between the assured and the company. The giving of the note instead of cash in advance by the applicant will not invalidate the insurance, if the contract be otherwise complete. See, directly in point, the very recent case of *Kilborn v. Insurance Co.*, 99 Minn. 176 (108 N. W. 861). In view of all the circumstances to which we have referred, it cannot be said that the judgment of the district court is without support in the record, and its finding in this respect must be treated as having the force and effect of the verdict of a jury. As bearing also upon the effect of failure to exact advance payment of premiums, see, also, *Elkins v. Insurance Co.*, 113 Pa. 386 (6 Atl. 224); *Sheldon v. Insurance Co.*, 25 Conn. 207 (65 Am. Dec. 565); *Walsh v. Insurance Co.*, 30 Iowa, 133; *Norton v. Insurance Co.*, 96 U. S. 234 (24 L. Ed. 689).

Error is also assigned by appellant upon the rulings of the trial court in excluding certain offered testimony. The points thus made are ruled by the conclusions we have hereinbefore announced, and we regard it unnecessary to discuss them in detail.

We find no reversible error in the record, and the judgment of the district court is *affirmed*.