AUGUST F. BEYER, Appellant, v. CENTRAL LIFE INSURANCE COM-
PANY OF ILLINOIS, Appellee.

**INSURANCE:** Life Insurance—Contract Without Delivery of Policy.
No contract of insurance exists when the application is wholly re-
jected, it being made to appear that said application was *received*
under a written provision that no insurance should exist until said
application was "approved, accepted, and said policy issued
and delivered," even though the local soliciting agent, without
authority, and in violation of his authority and unknown to the
insurer, falsely represented to the proposed insured that the appli-
cation had been accepted, and that the policy would be delivered in
due time.

Headnote 1:   2 C. J. p. 832; 32 C. J. pp. 1102, 1106. .

*Appeal from Johnson District Court.*—RALPH OTTO, Judge.

JANUARY 20, 1925.

ACTION in equity, for specific performance, to compel an
insurance company to issue a policy of insurance, and for recov-
ery of the amount due under said policy. The trial court dis-
missed the plaintiff's petition, and he appeals.   The facts appear
in the opinion.—*Affirmed.*

*Henry G. Walker* and *Randall & Korab*, for appellant.

*Dutcher & Hambrecht* and *W. E. Hinebaugh*, for appellee.

FAVILLE, C. J.—Appellee is a life insurance company, au-
thorized to do business within the state of Iowa.   It had as its
soliciting agent one Maney.   In February, 1921, appellant and
his wife, Rosina, made application, through the said Maney, for
insurance on their lives, in appellee company.   Appellant is
the beneficiary named in the application for insurance on the
life of his wife.   The first year's premium on the policy sought
to be obtained, amounting to nearly $300, was evidenced by a
note payable to appellee and delivered to Maney.   At that time,

a receipt was delivered to appellant and his wife, which provided, among other things, that:

"Said insurance is not to be in force and effect until said application shall be approved, accepted, and said policy issued and delivered by said company."

After the said applications and notes had been delivered to the agent, Maney, appellant and his wife submitted to a physical examination by the regular medical examiner of appellee company, who reported a recommendation that the applications be accepted and policies issued. Shortly thereafter, Maney received from appellee information that it had rejected the application of Rosina M. Beyer. Appellee forwarded to Maney the policy of appellant. Maney, however, wrote a letter to appellant, on March 11, 1921, referring to the policies of insurance on the lives of appellant and his wife, and therein stated:

"You have both been accepted by our company, and I will be over there in the near future and make delivery of your policies."

It also appears from the record that the agent, Maney, informed appellant orally that appellee had accepted the risk on the life of appellant's wife, and that he would deliver the policy within a short time. Rosina M. Beyer met an accidental death on April 27, 1921. The record shows that neither the said Rosina nor her husband, the appellant, had any notice or knowledge that the representations made to them by Maney in respect to the application and the issuance of the policy on the life of Rosina were false. This suit is brought to require appellee company to issue its policy of insurance on the life of Rosina in the ordinary and usual form, as provided in the application, and to recover the amount due on such policy.

I. The first and most vital question in the case is whether or not appellee is bound by the representations made by its agent, Maney, to appellant and his wife, to the effect that the application for insurance on the life of the wife had been accepted, and that a policy would be issued by appellee, notwithstanding the fact that said representations were false, and were made by the agent of the company without the knowledge of the company, and without specific authority to make them. This question has, under the record in this case, a twofold aspect:

First, was a binding and enforcible contract entered into between the insured and appellee; and second, is the appellee estopped, under the record, to deny its liability to issue to the insured its ordinary and usual policy of insurance?

Addressing ourselves to the first of these propositions, we meet at once the question as to whether or not appellee was bound in a contract by the statements and representations made to the insured by appellee's agent, Maney. It must be conceded to be the established law of this state that a contract to issue a policy of insurance may be completed without the actual issuance and delivery of a policy. But there can be no valid and enforcible contract without, at least objectively, a meeting of the minds of the parties. The application for a policy of insurance is, in legal effect, an ''offer'' on the part of the applicant. The offer must be accepted in some manner by the company, before it can be bound to issue its policy of insurance. The subject-matter of the contract between the parties is the policy of insurance; but the contract for such a policy is made as all other contracts are made,—by an ''offer'' by one party and an ''acceptance'' by the other.

In this case, the offer was properly made by the application for insurance. The appellee not only did not accept the offer so made, but unqualifiedly rejected it. How, then, can it be said that there was a meeting of the minds, and the formation of a contract?

Appellant contends that the act of the agent was, in effect, the act of the principal, and bound the principal thereby. It is hornbook law that a principal can only be bound by the acts of his agent within the scope of the authority conferred upon the agent, either expressly or impliedly. It never has been and cannot be the law that a principal can be bound by the acts of its agent which are not only unauthorized, but are directly contrary to the authority conferred, where no question of estoppel is involved.

Appellant places great dependence upon the case of *Kimbro v. New York Life Ins. Co.*, 134 Iowa 84. There are some distinguishing features between that case and the case at bar. In the *Kimbro* case, the insurance company *accepted the risk:* that is, it agreed to insure the applicant, but authorized a dif-

ferent policy from the one applied for. Not so in this case, because appellee absolutely refused to issue *any* policy or to accept the risk under any circumstances. Furthermore, in the *Kimbro* case the agent was expressly authorized to act for the insurance company in the matter of closing the negotiations for the issuance of a policy of insurance. The business was done through the office of the agent as a "branch office" of the insurance company. It was so designated by the company. The agent in that case did not follow the instructions given him in regard to procuring a new application for the new policy which the insurance company proposed to issue. He falsely informed the applicant that his policy had arrived, and would be delivered to him by the agent. Under such circumstances, we held that the insurance company was bound to issue the policy applied for on the risk which it had accepted. It appears that the agent was the medium through which the parties carried on their negotiations, and to whom the applicant had a right to look for information regarding the acceptance of the risk and the issuance of the policy. Not so in the case at bar. At the time the application for insurance was made, a receipt was given the applicant for the premium advanced in the form of a promissory note, and this receipt contained the following recital:

"Received from Rosina M. Beyer two hundred ninety-three and 58/100 dollars, being the first annual premium on an application for a policy of insurance in the Central Life Insurance Company, of Illinois, for fifteen thousand dollars, on the life of Rosina M. Beyer. It is hereby understood and agreed that said insurance is not to be in force and effect until said application shall be approved, accepted, and said policy issued and delivered by said company; if the application should be declined by the company, this agreement is to be null and void, and the amount (receipt whereof is herein acknowledged) is to be returned on surrender of this receipt."

The application provided that the applicant would accept the policy applied for "subject to all its provisions," and the policy applied for contained the provision:

"The payment of the first premium hereon is a condition precedent to the taking effect hereof, and this policy shall not become binding upon the company until said premium is ac-

tually paid and the policy delivered during the lifetime and good health of the insured, and the delivery of this policy without such payment through the mail, or otherwise, shall not be a waiver of such precedent condition.''

So the applicant was fully advised, and in fact ''understood and agreed,'' that the insurance was not to be in force and effect until the application was approved and accepted and the policy issued and delivered by the insurance company. No such provisions appear to have been embodied in any agreement between the applicant and the insurance company in the *Kimbro* case. The applicant herein bound herself by a valid agreement that the insurance was not to be in force and effect until the application should be approved and accepted and the policy issued and delivered by the company. Under such an agreement, how can it be said that the policy went into full force and effect when the risk was rejected, and no policy was ever issued or delivered? Can the insurance company be bound merely by the wholly unauthorized and unwarranted statement of a soliciting agent who acts in direct violation of the instructions given him?

The representations made by the agent could not supersede the terms and provisions of the agreement as to the acceptance of the risk and the issuance and delivery of the policy. The facts of the case clearly distinguish it from the *Kimbro* case. The record shows without dispute that the agent, Maney, had no authority, express or implied, to act as he did in the matter. He was not authorized to communicate anything to the applicant for the insurance, as in the *Kimbro* case. He was simply informed by the company that the application submitted by him had been rejected. He was not asked, nor was he authorized, to act for appellee in communicating that or any other information to the applicant. On his own motion, and admittedly for his own purposes, he falsely informed the applicant that the application had been accepted. Under such circumstances, how can it be said that appellee authorized any such statement, or is bound thereby? It is not merely a case where an agent disobeyed instructions and acted contrary thereto (if it be conceded that he was in such relationship), but it is a case where an agent acted in regard to a matter wholly outside the scope of any

authority conferred upon him. In such a case, the principal cannot be bound.

The trial court did not err in holding that appellee was not bound by the act of Maney in stating that the application of Rosina had been accepted, and that no contract for the issuance of a policy of insurance had ever been entered into between the applicant and appellee.

II. Appellant pleads that, by reason of the transactions between the parties, appellee is estopped to deny its liability to issue its policy of insurance.

There is nothing in the record to indicate that appellee ever had any knowledge or notice in any form that Maney had informed the applicant that her application had been accepted. It did not give Maney any authority to make any such representations. It did not know that Maney had made them. How, then, can it be estopped to deny that it had accepted the application? Furthermore, it nowhere appears that the applicant relied on the false statement made by Maney or acted to her injury in any manner because thereof. The record fails to disclose the essentials upon which an estoppel may be based.

We reach the same conclusion as did the trial court: that appellant has failed to establish a right to the relief sought; and the decree appealed from is—*Affirmed.*

EVANS, STEVENS, ARTHUR, and ALBERT, JJ., concur.