## NATIONAL LIFE & ACCIDENT INS. CO. v. VANN. (No. 2198.)

Court of Civil Appeals of Texas. El Paso. Nov. 15, 1928.

Rehearing Denied Dec. 13, 1928.

Hyer & Christian, of Fort Worth, for appellant.

Houtchens & Clark, of Fort Worth, for appellee.

HIGGINS, J. This is a suit by appellee upon a life insurance policy issued by appellant dated May 17, 1926, payable to appellee; assured being Carrie S. Vann, wife of appellee. It was alleged the assured died February 7, 1927.

Among other defenses, defendant pleaded a provision of the policy that no obligation was assumed by the defendant unless on the date of the policy the insured is alive and in sound health, and if the insured was not alive or in sound health on the date thereof, any amount paid to the company as premiums should be returned. It was alleged Mrs. Vann was not in sound health upon the date of the policy, but afflicted with cancer of the uterus, which later caused her death. Defendant tendered the amount of the premiums paid with interest.

The jury found Mrs. Vann was in sound health upon the date of the policy, and judgment was rendered in favor of plaintiff.

The only question necessary to be considered is the correctness of the court's action in refusing the peremptory charge requested by defendant, instructing the jury to find only for plaintiff $10.50, that being the amount of the premiums paid with accrued interest.

A résumé of all the evidence as made by appellant is correct. Omitting nonpertinent matter, it shows:

Dr. O'Bannon, witness for defendant, testified: Mrs. Vann was brought to him for treatment at Harris Sanatarium, on March 28, 1926. He found she was afflicted with cancer of the cervix of the uterus, which is the mouth of the womb, a condition also known as carcinoma of the uterus. He treated Mrs. Vann and observed her and made various examinations of her from that date to the time of her death. The cause of her death was the same as he had found on previous examinations. When Mrs. Vann first came to him for treatment, she and her husband told him that she had been suffering for about a year. He gave her treatment with radium and X-rays.

When she first came to him for treatment, the cancerous condition was well advanced. It was rather a large cancer, and extended out into the tissues about the site where it originated. It was what is called an inoperable cancer, or an advanced cancer.

He inserted radium in her on March 29, 1926. At that time she was in the sanitarium for nine days. After that she was admitted to the hospital several times, her complaint being the same each time.

Based on his experience and knowledge of medicine, he would not say that a person afflicted with carcinoma of the uterus on May 3, 1926, would be a person of sound health. He gave her radium treatment on March 29th and again on September 18th. At the time she entered the hospital the first time he gave her only one radium treatment. He gave her several treatments with X-ray.

During her first stay in the hospital he

gave her X-ray treatment on April 2, April 3, April 4, and April 5, 1926. He gave her other X-ray treatments September 22, September 23, September 24, and September 25, 1926. She was in the hospital from September 17, 1926, to September 26, 1926.

From her treatments during the first stay she recovered sufficiently to go home. He examined her at intervals between that time and the following September. He asked her to come back for re-examination at various times. At those times he gave her no treatment. After the treatment during her first stay, her condition was much better. It was for that reason he gave her no more treatment. He watched her condition, and it was satisfactory during those times. She was able to be up and do her housework.

He stated it was possible for a cancer to be retarded, and sometimes they never feel the effects of it during the balance of their life. He doubted if a doctor could have told by observation, after she was discharged the first time, that she was suffering from cancer. On examining her, he could not see any evidence of disease.

Supposing that a cancer was treated with radium and X-ray and was retarded for several months so that in his opinion no further treatment was necessary during the period of time of which he had spoken, and if the cancer was not increasing or requiring further treatement, the person having that cancer would be in ordinary health so far as that person himself knew. It would not be bothering him a bit in the world. While this cancer was dormant or retarded she knew nothing about it. She felt as good as she ever did during that time. Until the cancer would recur or start up again, the person would be in good health, from his own standpoint. Among doctors it is realized that there is a latent period, and they do not consider such patients in sound health for a period of five years. However, the patients themselves may consider that they are in sound health. He always regarded them with more or less suspicion and asked them to report back for observation.

He was sure that her death was caused by cancer.

So far as Mrs. Vann felt, and so far as was noticeable after she left the hospital the first time, she was able to go about and do her work, and appeared to be in the same health as any other woman, for a period. In September he noticed that there was a recurrence of the cancer, and at that time he was unable to check it. It is the natural course of a cancer that the body has no resistance to it, unless it and all microscopical traces of it are completely eliminated. It is unusual for it not to recur.

On redirect examination he stated that when Mrs. Vann was discharged from the hospital, on or about April 5, 1926, he did not pronounce her cured. After she left the hospital there was a period during which he could find no trace of the disease whatever, and she had no symptoms of the disease. There was a period after she left the hospital when the tissues began to heal. He did not remember exactly for how long after she left the hospital he could not detect these traces. As a general rule it is from three to four weeks. The fact that she was able to resume her ordinary duties and gained back her ordinary weight and strength was one of the indications that she was in the process of recovery.

The fact that the trouble recurred in September to such an extent that it would not respond to treatment would indicate a continuance of the disease throughout the intervening period from the first discharge from the hospital up to that time. They never assumed a person who had a cancer to be cured for a period of some years later.

On recross-examination he stated that, supposing that the first treatment and all evidence of it had disappeared for a period of several months, it might not be improbable that a person could have another cancer in the same place, not having any connection with the previous cancer; that is, it might be the same situation there at that time caused the cancer that was there that caused the first cancer. On further redirect examination he said: "We know of no such an occurrence taking place that we can prove."

Dr. S. A. Lundy, a witness for defendant, testified he was called to see Mrs. Vann on January 1, 1927, and he attended her on the day she died or on the day before she died. Her death was caused by carcinoma of the uterus. When he was called to see her on January, 1927, she and her husband gave him a history of the ailment with which she was suffering. From this conversation with them he estimated that she had been having some trouble with this affliction for two years.

Judging from Mrs. Vann's condition at the time when he was to see her in January, 1927, he would say that there was no question but that she had been suffering for at least a year.

He testified that, if the facts upon the trial showed that Mrs. Vann was examined by Dr. O'Bannon on March 28, 1926, and found by him to be suffering from carcinoma of the uterus, and during the following nine days she was given radium and X-ray treatment by him, and then discharged from the hospital with instructions to return from time to time in order that her condition might be watched, and during the interim between that and the month of September, 1926, the symptoms disappeared, but during September, 1926, she was again admitted to the same hospital and again examined by Dr. O'Bannon, and then found to have carcinoma of the uterus in the same spot and so far advanced that the disease would not respond to treatment, he would not say, based upon

those facts, that Mrs. Vann was a person of sound health at that time.

If it were true that Mrs. Vann was found to have this trouble in March, 1926, and it was again found to exist in September, 1926, that during March, 1926, it was found that the disease had spread to the surrounding tissues to a large extent, and was of a malignant form, and during the month of September it was found that the disease would not respond to treatment, it would be his opinion, under that state of facts, that Mrs. Vann was not free from this trouble at any time during the interim. It would be his opinion that during the month of May, 1926, based on the existence of those facts, she did have carcinoma of the uterus.

Based upon his examination and observation of Mrs. Vann in January and her physical condition at that time, and based upon his experience as a physician and surgeon, he would say that she was afflicted with carcinoma of the uterus during the month of May, 1926.

Plaintiff testified: Mrs. Vann went to Harris' Sanitarium for treatment some time in March, 1926, and was treated there by Dr. O'Bannon. He gave her a 90-hour radium treatment and one or two X-ray treatments. She was in the sanitarium about eight days and was discharged from the sanitarium the latter part of April. They told him they were treating her for cancer. Another doctor had told him she had a tumor in the womb. The cancer was in the womb or uterus. In September, 1926, his wife went back to Harris' Sanitarium and was treated by Dr. O'Bannon again for the same trouble at the same place. In the meantime she had been going to Dr. O'Bannon every two weeks for examination, although he was not treating her. About the middle of August, Dr. O'Bannon advised him to bring his wife back to the hospital. He said Dr. O'Bannon never did tell him that his wife was cured.

On direct examination he testified that from the time that she left the hospital, in the early part of April, until the first of September, she did all of her own housework, and, from his observation of her conduct and the way she got about during that time, he would say that she was in good health, as far as he could tell. He further said: "After my wife left the hospital the first time, when I took her back over there to see Dr. O'Bannon, he said she was all right and in as good health as anybody."

The evidence conclusively shows that shortly before the date of the policy sued upon Mrs. Vann was afflicted with a malignant cancer, which in less than one year from its discovery and diagnosis caused her death.

It is true that for a brief period after the treatment, in the latter days of March and first days of April, she appeared to have been benefited by the treatment to such an extent that there was basis for the hope and per- haps belief that the X-ray and radium treatment given by Dr. O'Bannon had eradicated the cancerous condition. But this hope was shattered, and belief proved to be unfounded, by the reappearance, not later than September 18, 1926, of the cancerous condition.

The reappearance of the disease showed conclusively that the treatment had merely retarded temporarily the progress of the disease.

In our opinion the evidence conclusively shows that the assured was not in sound health on May 17, 1926, the date of the policy, and reasonable minds cannot differ in that conclusion.

In support of the contrary view, appellee cites the recent case of National Life & Accident Ins. Co. v. Taree (Tex. Civ. App.) 8 S.W.(2d) 291. In that case the assured died of cancer of the uterus on March 23, 1927. The policy sued upon was dated December 14, 1925. The terms of the policy there sued upon were the same as in the present suit. In the Taree Case this court held that while the evidence tended strongly to show the assured was in a dangerous condition and not in sound health upon the policy date, nevertheless it did not so show with that degree of conclusiveness which would justify a requested peremptory charge in defendant's favor. In the first place, it may be remarked this conclusion was reached with much doubt as to it being correct. But however that may be, the evidence in the Taree Case was quite different from that here shown. The evidence in Taree's Case showed no more than a tumor in December, 1925, which the examining physician did not regard as cancerous or malignant, and another doctor testified: "A tumor is not a serious thing unless it becomes malignant. It is what we call benign."

In the present case it is conclusively shown Mrs. Vann had a malignant cancer about six weeks before the policy date.

The appellee presents the proposition that since the policy contains a two-year incontestability clause, it is now estopped to defend upon the ground indicated, because it has taken no affirmative steps to set the policy aside. In support of this position American National Insurance Co. v. Welsh (Tex. Civ. App.) 3 S.W.(2d) 946, is cited. This case seems to announce the rule that under the two-year incontestability clause appellant cannot defend upon the unsound health clause of the policy unless within two years it institute proceedings to cancel the policy.

We express no opinion as to the correctness of that ruling. If correct, it has no present application, because all of the proceedings in the lower court here were within two years from May 17, 1926, the date of the policy. The judgment was rendered October 1, 1927.

The answer setting up the unsound health and return of premiums provisions, together

with the tender of such premiums, was in avoidance and rescission of the contract, and meets the ruling in the Welsh Case where the suit was filed more than two years after the policy date, and the right to rescind and return the premiums was not asserted until the answer was later filed.

■ There is no issue presented of waiver by appellant of the provision of the policy upon which it relies. There is no evidence that any agent of the company knew of the condition of Mrs. Vann's health at the time of delivery of the policy. The policy was issued without medical examination. There is evidence that the agent who collected the weekly premiums became later advised that she was ill and in the hospital, but continuing to collect premiums with this knowledge would not operate as a waiver of the clause in question. The subsequent illness of an assured, known to the insurer who continues to collect the premiums, affords the latter no ground for rescission, and is no reason why the insurer should not continue to collect the stipulated premiums.

A different question perhaps would be presented if the insurer, under a policy such as here presented, continued to collect premiums with subsequent knowledge of an unsound condition of health upon the part of the assured existing at the date of the policy. Such is not the case here.

■ The defense based upon the sound health provision of the policy, if supported by the evidence, defeats the action. Ins. Co. v. Betz (Tex. Civ. App.) 99 S. W. 1140; Ins. Co. v. Crystal (Tex. Civ. App.) 272 S. W. 262; Wright v. Ins. Co. (Tex. Com. App.) 248 S. W. 325; National Life & Accident Ins. Co. v. Taree, supra.

The able brief submitted by appellee's counsel has been carefully considered, but we are of the opinion that none of the counter propositions contained therein would justify affirmance.

The case has been fully developed, and upon the facts proven the defendant is liable only for $10.50.

Reversed and rendered accordingly.