METROPOLITAN LIFE INSURANCE COMPANY v. WILLIAM BETZ, ADMINISTRATOR.

Decided December 22, 1906.

**Life Insurance—Ill Health—Policy Void.**

By the terms of a life insurance policy it was stipulated that the said policy should not be binding upon the company unless at the time the policy was delivered the insured was in sound health; it appeared from the undisputed evidence that, at the time the policy was received from the company and delivered to the insured, he was, in fact, though perhaps unconsciously, afflicted with a mortal disease which soon thereafter caused his death. Held, that the company was not liable on the policy.

Error from the County Court of Harris County. Tried below before Hon. Blake Dupree.

*Wilson & Dabney* and *Locke & Locke,* for plaintiff in error.—The court erred in not rendering judgment for the defendant, because the undisputed evidence showed that the defendant was not liable under the policy of insurance sued upon, for the reason that Charles W. Bathe was not in good health when the same was delivered. Security Mutual Life Ins. Co. v. Calvert (Texas Civ. App.), 87 S. W. Rep., 889; Hill's Admr. v. Penn Mut. Life Ins. Co. (Ky.), 90 S. W. Rep., 544.

*J. V. Meek,* for defendant in error.—The judgment of the court is fully supported by the evidence in this; that the testimony established that Bathe, the deceased, was in good health within the meaning of the provisions of the policy of insurance at the date when the same was delivered to him. Woodmen of the World v. Locklin, 67 S. W. Rep., 336; Mutual Reserve, etc., Assn. v. Bozeman, 52 S. W. Rep., 95; 1 May on Insurance, 596, par. 295.

PLEASANTS, ASSOCIATE JUSTICE.—This suit was brought by Wm. Betz, administrator of the estate of Charles W. Bathe, deceased, against the Metropolitan Life Insurance Company to recover upon a policy for $500 issued on the life of the said Bathe. The company defended on the ground that Bathe was not in good health at the time the policy was delivered and the premium paid, and therefore said policy by its terms did not become an obligation of the company; and further that Bathe had made misstatements in his application for the policy which rendered it void.

The trial below was to the court and resulted in a judgment in favor of plaintiff for the amount of the policy with interest, penalty and cost.

We deduce from the record the following facts: Bathe made a written and printed application to the company for the policy in suit February 10, 1905, and on the same date he was examined by Dr. F. B. Hogg, the company's medical examiner at Houston. The policy was issued under date of March 14, 1905. A copy of the application was attached to the policy, and by a clause appearing upon the face of the policy was made a part of the contract. Upon the face of the policy appeared also the following provision: "No obligation is assumed by the company until the first premium has been paid, nor prior to this date, nor unless upon the delivery of this policy the insured is alive and in sound health." Part C of the application contained over the signature of the applicant the following clause: "I further agree that the company shall incur no liability under this application until it has been received, approved and the policy issued and delivered and the premium has actually been paid to and accepted by the company during my lifetime and while I am in good health."

Mrs. Betz, wife of the plaintiff and mother-in-law of Bathe, and a beneficiary under his will, testified that the policy was delivered to her by the company's agent on March 23, 1905; and that she paid the first year's premium on it, and delivered it to Bathe upon his return home, he being at that time a member of her family, and being at work on his lot in the cemetery when the agent called. She said that until about April 15 he was robust and in good health, making no complaints. About that time he brought to her some medicine which she understood had been prescribed by Dr. Kyle.

Bathe died May 16, 1905, from a species of nephritis, commonly known as Bright's disease of the kidneys, complicated with some trouble of the heart. Dr. J. B. York was his attending physician at the time of his death, and had been since May 9, having succeeded Dr. J. A. Kyle in the treatment of the case at that time. In Dr. York's opinion Bathe had been suffering at least two or three months from Bright's disease at the time he was first called in to attend the case. This opinion was based upon the condition of the patient when first seen by him, and upon information received in answer to inquiries of the patient and those surrounding him.

Mrs. Burdick, Bathe's sister, testified that he had an attack of la grippe in January, 1905, and never was in good health thereafter. He was not confined to his bed by la grippe, but was under the treatment of physicians for it. She knew of his having had it by seeing him, and by his telling her of it. His general appearance after that time did not seem to be healthy; but it was about as it had been for a number of months.

Dr. Kyle first testified that he began to treat Bathe in February, 1905, but after examining the prescriptions filed at the drug store he testified that his first prescription for Bathe was on January 12. He stated that the primary cause of Bathe's death was nephritis and the secondary cause heart complication. He was uncertain in his statements as to when he first discovered that Bathe had kidney disease, his first statement being

that he made the discovery about a week after he began to treat the deceased but he subsequently stated that to the best of his recollection he began the treatment for kidney trouble about the 15th of March. Twelve prescriptions given by Dr. Kyle to Bathe were produced; three given on January 12, three on January 17; three on March 15, and three on March 24. None of these prescriptions was for Bright's disease. It was not shown that these were all of the prescriptions given by Dr. Kyle and he testified that there ought to be another containing lithia which was given for the kidney trouble. This witness also testified that when Bathe first came to him for treatment he complained of pain in his back in the region of the kidneys. He never told Bothe that he had kidney disease.

In addition to the testimony of plaintiff and his wife six witnesses were introduced who testified they were well acquainted with Bathe and saw him very often during the three months preceding his death, and that prior to 15th of April he appeared to be in good health and none of these witnesses had heard him complain of any sickness. One of these witnesses testified that he worked with Bathe all day on April 15 building a curbing around a lot in the cemetery and that Bathe broke rock with an axe and did a full day's work and was apparently robust and strong.

Under an appropriate assignment of error the appellant contends that the evidence in the case does not raise an issue as to whether the insured was in good health at the time the policy was delivered but conclusively shows that he was suffering from the disease which subsequently caused his death, and therefore the court erred in not rendering a judgment in favor of the defendant, the policy by its terms never having become an obligation of defendant.

We think the assignment should be sustained. The evidence above set out is such that reasonable minds can not differ in the conclusion that Bathe was not in good health at the time the policy was delivered. The testimony of the witnesses for plaintiff to the effect that he appeared to be in good health does not raise an issue as to whether he was in fact suffering from Bright's disease in view of the fact, which is one of common knowledge and was shown by undisputed evidence in this case, that the earlier stages of Bright's disease in no way affects the healthful appearance of the victim. Dr. Hogg testified that the existence of Bright's disease in its earlier stages would not be indicated by the appearance of the patient and this stealthy manner of the approach of the disease is a matter of common knowledge.

By the terms of the policy it was not to take effect as an obligation of the defendant unless the insured was in good health at the time of its delivery, and it being shown by the undisputed evidence that at that time the insured was affected with a mortal disease which subsequently caused his death, the defendant incurred no liability upon the policy and judgment should have been rendered in its favor. (Security Mut. L. Ins. Co. v. Calvert, 87 S. W. Rep., 889.)

It follows from this conclusion that the judgment of the court below should be reversed and judgment here rendered in favor of appellant, and it is so ordered.

*Reversed and rendered.*