HATTIE B. MICKEL, Appellant, v. MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Appellee.

INSURANCE: Life Insurance—Delivery of Policy—Estoppel to Question. The actual delivery of a policy of life insurance after the insured has, without fraud, been examined by the insurer's medical examiner and reported insurable, precludes the insurer from questioning the effectiveness of such delivery on the ground that, *after* the said examination and report, and *before* the delivery of the policy, the insured had, without the knowledge of the insurer, contracted a fatal disease; and this is true even though the application

distinctly provides that the policy shall not take effect unless the insured is in good health at the time of delivery, such proviso being ineffective, under Sec. 8770, Code of 1924, in those cases where the insurer makes delivery.

Headnote 1: 37 C. J. p. 406.

Headnote 1: 17 L. R. A. (N. S.) 144; 43 L. R. A. (N. S.) 725; L. R. A. 1916F, 171; 14 R. C. L. 900.

*Appeal from Marshall District Court.*—B. F. CUMMINGS, Judge.

MAY 13, 1927.

REHEARING DENIED DECEMBER 17, 1927.

Action upon a policy of life insurance issued by the defendant, Mutual Life Insurance Company of New York, upon the life of Anderson E. Mickel. Verdict for the plaintiff by direction of the court for $245.46, the amount of the single premium paid to the company. Plaintiff appeals.—*Reversed.*

*R. P. Scott,* for appellant.

*Sargent, Gamble & Read* and *C. H. E. Boardman,* for appellee.

EVANS, C. J.—This is an action upon a policy of life insurance issued by defendant-appellee on December 11, 1922, upon the life of Anderson E. Mickel, and payable to his wife, Hattie B. Mickel, plaintiff herein. The answer of the defendant admits the execution of the policy. The only defense presented for our consideration is predicated upon the claim that, after the date of the medical examination and of the application by the insured, and after the date of the actual execution of the policy at the home office, and before the delivery thereof to the insured, such insured had undergone a material and radical change of health, whereby he had become fatally ill, and that the purported delivery of the policy, under such circumstances, was ineffective, under the terms of the policy, to create an insurance contract. The following facts may be regarded as indisputably proved: The insured signed the application for insurance on December 2, 1922, and submitted himself to a medical examination by Dr.

Johnson, the medical examiner of the defendant insurance company. His application was approved by the medical examiner, and was sent by the local agent to the Des Moines office. The application was approved at the home office in New York on December 11, 1922, and the policy was executed on the same date, and returned for delivery. It was delivered by the local agent at Marshalltown on December 14th. This delivery was made by leaving the policy at the place of business of the insured, with one of his employees, who immediately delivered the same to the beneficiary of the policy, being the wife of the insured. On December 6th, the insured became violently ill, and underwent a surgical operation on the following day. This operation disclosed a gangrenous condition and infection of the gall bladder. The surgeon testified:

"There was an infection of the gall bladder. It had extended to the liver from continuity. The liver was discolored and black, and looked very bad."

On December 9th, a second operation was performed. Sometime later, pneumonia developed, doubtless induced by the surgical operation and by septicæmia. Death resulted on December 22d.

The application signed by the insured contained the following proviso:

"The proposed policy shall not take effect unless and until the first premium shall have been paid during my continuance in good health, nor unless also the policy shall have been delivered to and received by me during my continuance in good health; except in case a conditional receipt shall have been issued as hereinafter provided."

The following from the defendant's answer comprises the defense now relied on:

"Defendant avers and alleges that the aforesaid policy never became effective and never was and particularly is not now a binding contract, nor enforcible, for the reason that the same was not delivered to nor received by the said Anderson E. Mickel during his continuance in good health."

To meet this defense, the plaintiff relies upon Section 1812, Code of 1897, being Section 8770 of the present Code. The record discloses no evidence of fraud or concealment of any kind. It will be noted from the foregoing that the defense here consid-

ered is not that there was *no delivery* of the policy, but that there was no delivery thereof to the insured *during his continuance in good health.*

Section 1812, Code of 1897 (Section 8770, Code of 1924), is as follows:

"In any case where the medical examiner, or physician acting as such, of any life insurance company or association doing business in the state shall issue a certificate of health or declare the applicant a fit subject for insurance, or so report to the company or association or its agent under the rules and regulations of such company or association, it shall be thereby estopped from setting up in defense of the action on such policy or certificate that the assured was not in the condition of health required by the policy at the time of the issuance or delivery thereof, unless the same was procured by or through the fraud or deceit of the assured."

The question presented, therefore, is not whether the defendant-company could have refused delivery, upon discovering the changed condition of health of the insured, but whether, notwithstanding the delivery of the policy, the defendant-company retained the right to challenge the validity of the contract and of the delivery thereof upon the ground that the insured had suffered a change of condition of health after the medical examination and before the delivery of the policy.

At the close of the evidence, both parties moved for a directed verdict. The motion of the defendant was sustained. The question presented involves the construction of the section of the statute above quoted.

This statute has been frequently referred to and construed by this court, but the precise question presented upon this appeal has not apparently previously been passed upon, viz.: Does the estoppel created thereby preclude the insurer from setting up the provisions of the application quoted above, the fatal illness having been contracted subsequent to the date of the medical examination and the report thereof to the company of the examining physician, and prior to the delivery of the policy to the insured? But for the statute, the terms of the application might be pleaded by the company as a defense. *Wilson v. Interstate Bus. Men's Acc. Assn.,* 160 Iowa 184; *Peterson v. Des Moines Life Assn.,* 115 Iowa 668; *Beyer v. Central Life Ins. Co.,* 199 Iowa

245; *Wilkinson v. Connecticut Mut. Life Ins. Co.,* 30 Iowa 119; *Hruska v. Prudential Ins. Co.,* 203 Iowa 1165.

The estoppel created by the statute is broad and sweeping, and in express terms includes both the time of *issuance* and the time of the *delivery* of the policy. The purpose thereof, as stated in *Weimer v. Economic Life Assn.,* 108 Iowa 451:

"* * * is to prevent the defeat of recovery on any policy where the company has, by its skilled agent, examined and passed upon the fitness of the applicant for insurance. The estoppel is directed to inquiry as to the condition of health, and it is quite immaterial what representations have been made or warranties given. The company, having investigated, and for itself ascertained and declared the condition of the assured to be such as required by its rules and regulations, will not be permitted to interpose as a defense the physical infirmities of the deceased, of which it knew, or might have known, as the result of its examination; and the fraud or deceit referred to is that of procuring the report or certificate of the physician, and not the policy, and there is no averment to the effect that the examiner was misled or deceived in any way, or that the report was the result of collusion between him and the assured."

In some of the prior decisions of this court, the statute is discussed with particular reference to the time of the issuance of the policy only; but in each of these cases, the defense relied upon was fraud in the procurement of the policy, and the question of delivery was not necessarily involved. *Peterson v. Des Moines Life Ins. Assn.,* 115 Iowa 668; *Ley v. Metropolitan Life Ins. Co.,* 120 Iowa 203; *Bohen v. North American Life Ins. Co.,* 188 Iowa 1349. But, in the following cases, the time of delivery was material, and the statutory estoppel was applied. *Roe v. National Life Ins. Assn.,* 137 Iowa 696; *Unterharnscheidt v. Missouri St. Life Ins. Co.,* 160 Iowa 223. In the *Roe* case we said:

"But it is said that, because of a condition in the certificate that it should not become operative until 'delivered to the insured named herein while in good health,' the certificate never took effect, for that the insured was never in good health subsequent to the signing of the application. This contention is disposed of by the statute providing that the association shall be estopped by its examiner's report from setting up in defense to an action on such a certificate that the insured 'was not in the condition of

health required by the policy at the time of the issuance or delivery thereof.' Section 1812, Code [of 1897]. This language is conclusive as to the point raised."

The distinction, if any, in the cited cases and the rules established thereby and the case before us is that in the prior cases it was claimed that the illness existed prior to the date of the application, and in the present case it arose subsequent thereto, and could not have been discovered by the medical examiner. Many courts in other jurisdictions have sustained similar provisions of insurance contracts, and permitted the insurer to plead and prove as a defense that the insured, at the time he received the policy, was not in good health. *Mutual Life Ins. Co. v. Willey,* 133 Md. 665 (106 Atl. 163); *Rathbun v. New York Life Ins. Co.,* 30 Ida. 34 (165 Pac. 997); *Federal Life Ins. Co. v. Wright* (Tex. Civ. App.), 230 S. W. 795; *Powell v. Prudential Ins. Co.,* 153 Ala. 611 (45 So. 208); *Metropolitan Life Ins. Co. v. Betz,* 44 Tex. Civ. App. 557 (99 S. W. 1140); *Hills' Admr. v. Penn Mut. Life Ins. Co.* (Ky.), 90 S. W. 544; *Guarascio v. Prudential Ins. Co.,* 110 Wash. 1 (187 Pac. 405); *Metropolitan Life Ins. Co. v. Willis,* 37 Ind. App. 48 (76 N. E. 560); *American Bankers' Ins. Co. v. Thomas,* 53 Okla. 11 (154 Pac. 44); *Nyman v. Manufacturers & Merch. Life Assn.,* 262 Ill. 300 (104 N. E. 653); *Thompson v. Travelers Ins. Co.,* 13 N. D. 444 (101 N. W. 900). In none of the foregoing cases was a statute similar to Section 8770 involved.

Two applicable and obvious legal rules may be briefly stated, as follows: (1) The legislature may, by proper enactment, make the report or certificate of the company's medical examiner to the effect that the applicant is a fit subject for insurance conclusive, and may deny the company the right to set up ill health on the part of the insured as a defense existing at the time of such medical examination and the issuance of the policy, or at the time of the delivery thereof to the insured, even though the illness may have arisen prior or subsequent to the medical examination and the report of the examiner to the company; (2) that an insurance company may not contract with an applicant for insurance in disregard of such enactment, and bind him thereto.

The provisions of the application relied upon as a defense in this case are not, *per se,* invalid, under Section 8770, Code of 1924; but, if the statute is applicable where the illness arose

wholly subsequent to the date of the medical examination and report of the medical examiner, then they cease to be effective immediately upon the delivery of the policy and the acceptance thereof by the insured. It follows from what we have already said that an insurance company has a right to contract with an applicant that the policy shall not go into effect until delivery thereof to such applicant while he is in good health; but such provision is for the sole benefit of the insurer, and gives to it the option to refuse to deliver the policy to the applicant, if he is not at the time in good health. In other words, the insurer has the option of withholding the policy, in which event it would not go into effect, or of delivering it to the insured. If it accepts the latter alternative, the policy goes into effect at once, and the bar of the statute precludes the insurer from setting up the contract as a defense in an action thereon. The means of ascertaining the physical condition of the insured in this case were readily at hand on December 14th, when the policy was left at his place of business for him.

Defendant-appellee puts special reliance upon *Wilson v. Interstate Bus. Men's Acc. Assn.*, 160 Iowa 184, and *Beyer v. Central Life Ins. Co.*, 199 Iowa 245. These cases present little aid to the solution of the question now before us. The *Wilson* case turned upon a demurrer, and the ruling was predicated upon an averment of fraud and concealment. This of itself took the case out of the operation of Section 8770. In the *Beyer* case, the application for insurance had been disapproved, rather than approved, and no policy had been delivered or issued. The applicant in that case brought an action to compel issuance and delivery of the policy. We held that no contract had been consummated, and dismissed the petition. What we now hold in the case before us is that the delivery of the policy brought it under the operation of Section 8770, which in terms barred the defendant-company from predicating defense upon the condition of health of the insured "at the time of the issuance or *delivery* thereof."

Under this construction of the statute, the motion of the plaintiff for a directed verdict should have been sustained.— *Reversed.*

STEVENS, J., not participating.

All the other justices concur.