Minnie Boos, Appellant, v. Mutual Life Insurance Company of New York, Appellee.

November 22, 1927.

Rehearing Denied March 10, 1928.

*R. Feyerbend* and *M. F. Condon*, for appellant.

*John H. Howard* and *Deacon, Sargent & Spangler*, for appellee.

Stevens, J.—On August 2, 1924, the appellee, Mutual Life Insurance Company of New York, issued two policies for $1,000, each upon the life of William A. Boos. Both policies named Minnie Boos, appellant, wife of the insured, as beneficiary. The insured died June 22, 1925, of heart failure, resulting from drinking an excessive quantity of alcohol. The defense interposed to appellant's cause of action and particularly relied upon as a ground for affirmance was that the certificate of the physician was obtained by the fraud and deceit of the insured.

The original application and certificate of the examining

physician were introduced in evidence, and have been certified to this court for examination. The questions printed upon the application to which appellee contends false answers were given, with the answers, are as follows:

"Q. 16. What illnesses, diseases, injuries, and surgical operations have you had since childhood? A. No operation or sickness since childhood; no disease.

"Q. 18. Have you stated in answer to question 16 all illnesses, diseases, injuries, and surgical operations which you have had since childhood (Ans. Yes or no)? A. Yes.

"Q. 24 (e). Have you ever taken cure for alcoholic or drug habit? (If so give date or dates.) A. No.

"Q. 31. Have you ever been at any asylum, cure, hospital or sanitarium for treatment, observation, or diagnosis? A. No."

The insured had been treated, a few years prior to the date of the examination, which was July 29, 1924, by the examining physician for the flu. The illness was not of a serious character. The evidence shows that the insured was, on or about March 28th, committed to the inebriate hospital by the district court of Chickasaw County. The answers, therefore, to Questions 24 (e) and 31 were wholly false.

It is provided by Section 8770 of the Code of 1924 that the certificate of the examining physician shall be conclusive as to the health of the applicant unless the same was obtained by fraud. The examining physician had been acquainted with the applicant for 20 years, and, during a portion of that time at least, had attended him or his family professionally. He testified that he did not know that the applicant had been treated for the liquor habit in the inebriate asylum, at the time the certificate was signed and forwarded to appellee.

Counsel do not disagree as to the elements necessary to be shown, to constitute fraud. That the answers to the questions stated were false and known by the applicant to be false is clearly shown. This being true, the intention to deceive the company may be implied. This is not, however, sufficient to avoid the policy. The additional element that the examining physician was deceived and misled thereby and induced to issue the certificate in reliance upon the answers to the questions as set forth in the application must be established. We said in *Weimer v. Economic Life Assn.*, 108 Iowa 451, that:

" * * * the fraud or deceit referred to [in the statute] is that of procuring the report or certificate of the physician, and not the policy * * * ."

The interpretation of the statute here adopted has been consistently followed by this court. *Schupanitz v. Farwick,* 115 Iowa 451; *Roe v. National Life Ins. Assn.,* 137 Iowa. 696; *Boulting v. New York Life Ins. Co.,* 182 Iowa 797; *Ley v. Metropolitan Life Ins. Co.,* 120 Iowa 203.

The question is not, therefore, whether, if true answers had been made to the questions, a policy would have been issued by the company. It might, or might not, with full information, have accepted the risk. The inquiry at this point is limited to the effect of the false statements upon the examining physician in determining and ascertaining the state of health of the applicant. Was he misled and deceived thereby and induced to issue a certificate of health, when, had he been apprised of the facts, he would not have done so? This question must be answered by the testimony of the physician himself. His answers were evasive, but, on the whole, frank. Every question printed upon the application was answered by the applicant, and the answers written thereon by the examiner. Likewise, every question printed upon the medical examiner's report was answered by him. The examination was evidently thorough, and must have completely satisfied the examiner that the applicant was a fit subject for insurance. To the question "Do you without reservation recommend the applicant for insurance?" the examiner answered, "Yes." He was asked time and again by counsel for the appellee to state whether he would have so answered the question if correct answers had been made by the applicant to the questions quoted supra. He several times answered that he would not, without reservation,—that he would have left it to the company to determine whether it desired to accept the risk, —but his answers to the final questions propounded to him by counsel were as follows:

"A. Well, if his physical examination proved to be good, and his treatment had been a number of years prior to this examination, I would have said 'Yes,' and leave it up to the medical examiner to reject him or accept him.

"Q. That is, if the facts had been disclosed to you? A. Yes.

"Q. And appeared on the application itself? A. Yes.

"Q. You, with that information in the application, would recommend him, regardless of the treatment he had received? A. I could do that,—yes, sir.

"Q. I didn't ask you whether you could,—I asked you whether you would, Doctor, have signed this unqualified recommendation that appears on Exhibit No. 1. A. Yes, sir."

Can this court say, as a matter of law, on the record thus made, that the certificate of the examining physician was obtained by fraud? We have carefully read the transcript of this witness's testimony, and he nowhere states that he would not have recommended the applicant for insurance if he had known the true facts. The most he appears to have been willing to say was that he would have made the recommendation with reservations. He testified that there was nothing in the appearance or physical condition of the applicant to indicate that he had taken the cure for the liquor habit. It was, we think, for the jury to say whether or not, if truthful answers had been made to the question, a different certificate would have been issued. The witness repeatedly said that the answers, if truly made, would have shown on the application, and this would have put it up to the company to determine the advisability of accepting the risk. It is not claimed that the medical examination in any way tends to show that the applicant was not a fit subject for insurance. The applicant answered the question ''To what extent have you used wine, spirits, or malt liquors during the past year? State amount, kind and how much in any one day at the most,'' as follows: ''Very little whisky.'' Also, the question ''If a total abstainer, how long have you been so?'' as follows: ''Not a total abstainer.''

The company was, therefore, informed that the applicant was more or less addicted to the use of intoxicating liquors. The application is dated July 29th, and the policies August 2d. A question of fact was clearly here presented for the jury, and we are convinced that the motion to direct a verdict should have been overruled.—*Reversed.*

EVANS, C. J., and FAVILLE, KINDIG, and WAGNER, JJ., concur.