EQUITABLE LIFE INSURANCE COMPANY OF IOWA, Appellant,
v. EDNA M. MANN, Executrix, Appellee.

No. 46022.

JANUARY 19, 1943.

REHEARING DENIED APRIL 9, 1943.

Phineas M. Henry, of Des Moines, and Ross, Everest, Geiser & Johnson, of Council Bluffs, for appellant.

Kimball, Peterson, Smith & Peterson, of Council Bluffs, for appellee.

OLIVER, J.—A previous appeal from a dismissal upon the pleadings is reported in 229 Iowa 945, 295 N. W. 461. On October 15, 1938, decedent, Ida E. Michener, a business woman, made written application to appellant for $5,000 life insurance. Because of her age, sixty-four years, appellant required a trial application by its agent, which was made October 25th. In the meantime appellant secured from the Retail Credit Company a general report concerning applicant's occupation, finances, reputation, apparent health, and such personal and family health history as the reporter learned. On November 14th, decedent completed her application and took her medical examination. The policy was issued November 15, 1938. In her application, decedent reported injury in an auto accident, pneumonia, uterine fibroid, later adhesions, and an appendectomy, all more than five years prior to 1938.

Insured died of cerebral hemorrhage September 26, 1939. Thereafter, appellant instituted this action to cancel the policy,

based upon the following questions and answers in the application:

"13 a. Have you ever had or been told that you had any ailment or disease of the * * * (3) liver, gall bladder, stomach or intestines? A. No.

"13 (f). Have you within the past five years consulted a physician or other practitioner or received medical or surgical advice or attention for any reason other than that stated in your foregoing answers? A. No."

In its petition appellant pleaded:

"That in truth and in fact the said Ida E. Michener consulted Dr. Harriett Hamilton of Council Bluffs, Iowa, several times in the year 1935 because she had been vomiting blood, and the said Dr. Hamilton diagnosed her ailment as an ulcer of the stomach, and that the said applicant consulted Dr. A. A. Johnson of Council Bluffs, Iowa, several times in the year 1935 because of an intestinal hemorrhage and because of a fainting spell."

The petition asserted the policy was issued in reliance upon said statements; that had appellant known they were untrue it would not have issued the policy; and that by reason thereof the policy never took effect.

Appellee, by answer and cross-petition, alleged the policy was in full force and effect and demanded recovery thereon. The answer to said cross-petition asserted the policy never took effect because of the facts set forth in the petition.

I. Section 8770, Code of Iowa, 1939, provides that in any case where a medical examiner or physician of any life insurance company shall issue a certificate of health or declare the applicant a fit subject for insurance, or so report to the company, "* * * it shall be thereby estopped from setting up in defense of the action on such policy or certificate that the assured was not in the condition of health required by the policy at the time of the issuance or delivery thereof, unless the same was procured by or through the fraud or deceit of the assured."

We have frequently held that to establish the affirmative

defense of fraud required by this section, the proof must be clear, satisfactory, and convincing, and must show (1) a material representation of an existing fact (2) its falsity (3) scienter (4) intent that it be relied upon (5) that the examining physician relied and acted thereon and (6) that the company was thereby defrauded. Ley v. Metropolitan L. Ins. Co., 120 Iowa 203, 94 N. W. 568; Bohen v. North American L. Ins. Co., 188 Iowa 1349, 177 N. W. 706; Olson v. New York L. Ins. Co., 229 Iowa 1073, 295 N. W. 833.

Among authorities holding intentional fraud must be proved to establish such defense are Colver v. Continental Assur. Co., 220 Iowa 407, 262 N. W. 791; Sargent v. Modern Brotherhood, 148 Iowa 600, 127 N. W. 52; Peterson v. Des Moines L. Assn., 115 Iowa 668, 87 N. W. 397; Boos v. Mutual L. Ins. Co., 205 Iowa 653, 216 N. W. 50; Stewart v. Equitable Mut. L. Assn., 110 Iowa 528, 81 N. W. 782.

On behalf of appellant, Dr. Johnson testified that on September 9, 1935, deceased called at his office and stated she had a hemorrhage of the bowels on August 18, 1935, with a five-minute fainting spell, and that her attending doctor had prescribed one tablespoon of cream every hour for forty-eight hours. Dr. Johnson analyzed a specimen of urine and found it normal. Her blood pressure was normal, hemoglobin blood count above average, and white-corpuscle count normal. The examination disclosed her to be a normal person. From the blood count the doctor concluded she could not have had a hemorrhage on August 18th.

Decedent called at the doctor's office about a month later and again on November 14th. He gave her no dietary instructions and no treatment for hemorrhage. His only prescription was elixir of luminal, a mild sedative. From the doctor's testimony it is apparent he was satisfied decedent had no ailment which required treatment.

Another witness for appellant was Dr. Harriett Hamilton, by whom the tablespoons of cream had been prescribed. Decedent called at this doctor's office one day and the doctor called at decedent's home the following day. This doctor made no diagnosis of decedent's complaint but advised decedent to remain in bed. Decedent did not again consult Dr. Hamilton.

The examining physician for the insurance company testified that had appellee told him in 1938 of her alleged symptoms and consultations with Dr. Johnson and Dr. Hamilton in 1935, he would have made a note of it upon the application.

Appellee's evidence showed that between August 1933 and May 1939, when she was stricken with the cerebral hemorrhage which caused her death, decedent had not lost a single day's work and had shown no indication of any illness in connection with her work.

In argument appellant states:

"We assume that the opposing counsel will argue that she did not answer the question as to an ailment or disease of the stomach or intestines falsely, and we will concede that it has not been conclusively proven that she did have any such disease."

It is well established that failure to report a mere temporary disability or indisposition, not amounting to a disease, and treatments therefor by physicians, does not necessarily constitute fraud or deceit. In construing questions and answers relating to prior attendance by physicians the courts insist upon a reasonable or even a liberal construction in favor of the assured. Sargent v. Modern Brotherhood, supra; Colver v. Continental Assur. Co., supra; Olson v. New York L. Ins. Co., supra.

The decree of the trial court refers to the negative findings of Dr. Johnson in 1935, the inference that he advised decedent her condition was that of a normal person, and that she so believed and understood. The decree then recites:

"The evidence in this case wholly fails to show anything that even remotely suggests intentional fraud on the part of the insured in making application for policy of insurance more than three years thereafter, and when, according to the evidence she had been working every day at her job. * * *

"The whole record appears to the court to reflect the thought that it was of such minor importance that when asked as to whether she had consulted a physician or had suffered from named stomach disorders, that she merely forgot to mention the same."

The record supports these findings of the trial court and we concur in them.

II. However, appellant contends the estoppel provided by Code section 8770 is not here applicable because the statute states only, "* * * it shall be thereby estopped from setting up in defense of the action on such policy * * *." Appellant points out that this is not a defense but is an affirmative action by it to cancel the policy. Appellant also contends that since its action is in equity to cancel the policy, proof of intentional fraud is unnecessary. Therefore, appellant asserts it was not required to allege and prove that the report of the medical examiner was obtained by fraud or deceit. We quote from appellant's argument,

"The petition for cancellation in the case at bar did not contain any such allegations. The omission was intentional because it was our opinion that Section 8770 does not apply to an equitable action to rescind."

The language, "in defense of the action on such policy," has never been interpreted by this court but the principles governing such interpretation have been frequently recognized elsewhere. In certain jurisdictions statutes have been enacted such as, "no corporation shall hereafter interpose the defense of usury in any action" or "no corporation shall hereafter plead or set up the defense of usury to any action brought against it."

In Rosa v. Butterfield, 33 N. Y. 665, 668, the court said, concerning such statutory provision,

"Again: the language of the section speaks only of the interposition of usury as a *defense* to an action. In strictness this would leave the corporation free to use any offensive remedy which the law recognizes. For instance, to file its bill in equity to cancel the usurious agreement, and regain possession of any securities it had given; or to bring suit to recover back the usurious premiums it had paid; or to sue in trover for property or securities deposited as collaterals. But such a construction would defeat all the beneficial aims of the act, and usury would only cease to be a shield, to become the more obnoxious as a sword. The corporation forbidden to use it as a defendant, by

instituting a suit as plaintiff, could under the former statute annul or wrest from the holder the very contract against which it could make no defense. Hence the courts were constrained to hold that since the enactment of this law, no corporation can maintain an action to invalidate its contracts on the basis of usury." (Citing authorities.)

In 27 R. C. L. 265, section 68, it is said:

"However, the effect of such an act is not limited to the case of a corporation made a party defendant to an action and setting up usury as a defense thereto. The courts have interpreted the word 'defense' to mean any position or attitude in an action in which a corporation seeks to avoid its own contract by showing that it is usurious. This interpretation was adopted because the contrary construction would have defeated all the beneficent purposes of the statute. Hence the statute precludes the avoidance of a contract of a corporation on the ground of usury, whether technically by defense or by affirmative action."

This doctrine is generally accepted. Miller v. Reid, 243 Mich. 694, 220 N. W. 748; Bramhall v. Atlantic Nat. Bk., 36 N. J. Law 243; Brierley v. Commercial Credit Co., D. C., Pa., 43 F. 2d 724, 3d Cir., Pa., 43 F. 2d 730, certiorari denied 282 U. S. 897, 51 S. Ct. 182, 75 L. Ed. 790; Carozza v. Federal Fin. & C. Co., 149 Md. 223, 131 A. 332, 43 A. L. R. 1; note, 14 Ann. Cas. 115; annotation, 43 A. L. R. 19; annotation, 74 A. L. R. 210; 66 C. J. 255.

In the light of the foregoing pronouncements, it appears an action by an insurance company to cancel a policy upon grounds referred to in Code section 8770 should be held to be within the purview of said statute. In Weimer v. Economic L. Assn., 108 Iowa 451, 453, 79 N. W. 123, we said, concerning Code section 8770:

"The very evident purpose of the statute is to prevent the defeat of recovery on any policy where the company has, by its skilled agent, examined and passed upon the fitness of the applicant for insurance. The estoppel is directed to inquiry

as to the condition of health, and it is quite immaterial what representations have been made or warranties given.''

Mickel v. Mutual L. Ins. Co., 204 Iowa 1266, 1270, 213 N. W. 765, 767, states:

''The estoppel created by the statute is broad and sweeping * * *.''

The Mickel case also states, at page 1271 of 204 Iowa, page 768 of 213 N. W.:

''Two applicable and obvious legal rules may be briefly stated, as follows: (1) The legislature may, by proper enactment, make the report or certificate of the company's medical examiner to the effect that the applicant is a fit subject for insurance conclusive, and may deny the company the right to set up ill health on the part of the insured as a defense * * * (2) that an insurance company may not contract with an applicant for insurance in disregard of such enactment, and bind him thereto.''

The applicability of Code section 8770 to an action in equity to cancel a policy was considered in Mutual L. Ins. Co. v. Cunningham, 8 Cir., Iowa, 87 F. 2d 842, 845. The court there notes a seeming conflict between Nelson v. Nederland L. Ins. Co., 110 Iowa 600, 81 N. W. 807, and the later case of Mickel v. Mutual L. Ins. Co., supra:

'' * * * as to whether this statute goes merely to the remedy, as held in the Nelson Case, or is a rule of substantive law passing into the contract, as held in the Mickel Case. If this conflict exists, we must accept the rule of the Mickel Case as being the latest pronouncement of the Supreme Court of the state. If this is the situation, the statutory provision becomes a part of the contract in the sense that the contract is governed thereby and United States courts acting in equity will enforce it. [Citing authorities.]

''However, the above conflict may be more seeming than real when we give regard to the method and effect of the statute. The statute declares an 'estoppel' in a certain fact situation. This estoppel is positive and not rebuttable. When

the fact situation exists (as here), the statute exerts its full force and the provisions in the contract relating to innocent false statements in the application for insurance lose all influence whatever may be the fact as to the truth or falsity of such statements. Thus the effect of the statute is, in a practical sense, to change the contract while the method of bringing about that effect is through estoppel which is often regarded as remedial. This is that character of estoppel which is really 'a rule of substantive law masquerading as a rule of evidence.' [Citing authorities.] Where a statute is of this character it does not limit the equitable jurisdiction of the United States courts and will be recognized and enforced in such courts. [Citing authorities.] Statutes of this character have been repeatedly held valid and have been enforced in law actions. [Citing authorities.] Thus under either view of the above Iowa decisions, the statute is enforceable in this action in equity.''

We hold the provisions of Code section 8770 are equally applicable to actions in equity and at law. We also hold the provisions of said statute concerning the conclusiveness of the physician's certificate are applicable to all actions in which the company seeks to cancel the policy or avoid liability thereunder, whether technically by defense, or by affirmative action.

As heretofore noted, appellant's proof was insufficient to warrant rescission under the requirements of Code section 8770.

This conclusion renders unnecessary the consideration of other propositions relied upon by appellee for affirmance.— Affirmed.

All JUSTICES concur.