NEW YORK LIFE INSURANCE COMPANY, Appellant, v. JOHN G. HESSELING, Appellee.

No. 46688.

June 19, 1945.

Carr, Cox, Evans & Riley and Ehlers English, all of Des Moines, for appellant.

J. O. Watson, Jr., of Indianola, for appellee.

WENNERSTRUM, J.— Plaintiff in an action in equity sought to cancel a policy of insurance issued by it on the life of Bernard Hesseling wherein the defendant, John G. Hesseling, was named as beneficiary. The particular basis of the plaintiff's action was that the policy of insurance was not in force at the time of Hesseling's death. It is claimed that under the terms and conditions of the application for insurance and the policy itself no insurance was effective inasmuch as the applicant had consulted and had been treated by a physician between the dates of his medical examination and the issuance and delivery of the policy. The trial was had upon agreed stipulation of facts, evidence, and documentary exhibits. The court held that delivery had been made by the company and that by reason of certain statutory provisions of the Code of Iowa the plaintiff was estopped from raising any question as to the physical condition of the assured and his attendance by a physician subsequent to the application and medical examination. The plaintiff's petition was dismissed and decree and judgment was entered for the defendant upon a counterclaim which sought recovery of the amount of the insurance provided for in the policy. The plaintiff has appealed.

On December 12, 1939, Bernard Hesseling made application

to the New York Life Insurance Company for a policy of life insurance in the amount of $1,000.

The applicant for insurance was advised that the first quarterly premium payment was $6.03. The sum of $1 was paid by him and he directed the agent to collect the balance of the quarterly premium from the applicant's brother, John Hesseling, Jr. The medical examination was made on December 27, 1939. On December 28, 1939, the soliciting agent collected from the applicant's brother the balance of the first quarterly premium of $5.03. The application for insurance and the medical examiner's report were thereafter forwarded to the company. The policy of insurance was prepared and issued by the company on January 2, 1940, and by it forwarded to its branch office at Des Moines. That office in turn sent it to the soliciting agent at Indianola, who received it on January 5, 1940. On that date the agent delivered the policy to the applicant's brother. At the time of the delivery of the policy the agent collected from the brother an additional premium of twenty-nine cents, which was an increased rate charged the applicant because of his employment in a dry cleaning and pressing establishment.

The record shows that on December 30, 1939, Bernard Hesseling consulted a physician in Indianola, who treated him. On the next day, December 31, 1939, the applicant consulted another physician in Indianola, who also treated him and who on that day sent him to the Iowa Methodist Hospital in Des Moines. On this same day Hesseling was operated on, which operation disclosed that he was then suffering from peritonitis resulting from a ruptured appendix. He died on January 13, 1940.

It is further shown that at the time the agent delivered the policy to the applicant's brother the agent was advised that Bernard Hesseling was in a Des Moines hospital and had been operated on for appendicitis. The agent testified that he was under the impression that inasmuch as the premium had been paid the applicant was entitled to the policy and therefore delivered it to applicant's brother. It is also shown that the agent did not communicate the information he had learned as to Bernard Hesseling's condition to the Des Moines branch

office, to the home office, or to anyone connected with the New York Life Insurance Company.

The appellee, John G. Hesseling, submitted proofs of the death of Bernard Hesseling on January 15, 1940, and through said proofs made claim and demand upon the appellant for the payment of the amount of $1,000 as provided for in the policy. The company denied liability by reason of the agreement in the application, which was to the effect that the insurance applied for should not take effect unless and until the policy was delivered to and received by the applicant and then only if the applicant had not consulted with or been treated by a physician since his medical examination for the insurance. The company tendered the beneficiary the amount received by it on account of the premium paid, with interest thereon from the date of its receipt to the date of the tender. This tender was not accepted by the appellee, who, through his attorney, returned the tendered amount to the company.

The application for insurance which was made by Bernard Hesseling was, in part, as follows:

"It is mutually agreed as follows:

"1.   That the insurance hereby applied for shall not go into force unless and until the policy is delivered to and received by the applicant and the first premium thereon paid in full during his lifetime, and then only if the applicant has not consulted or been treated by any physician or practitioner since his medical examination * * *

"3.   That only the President, a Vice-President, a Secretary or the Treasurer of the Company can make, modify or discharge contracts, or waive any of the Company's rights or requirements; that notice to or knowledge of the soliciting agent or the Medical Examiner is not notice to or knowledge of the Company, and that neither of them is authorized to accept risks or to pass upon insurability."

It is the contention of the appellant (1) that the trial court erred in holding that the insurance in question became effective notwithstanding the fact that the conditions agreed upon in the application had not been met (2) that the trial

court erred in holding that section 8770 of the Code of Iowa was applicable.

I. We shall first give consideration to the question whether or not section 8770 of the 1939 Code of Iowa applies to the facts disclosed in this case. It is as follows:

"Physician's certificate—conclusiveness. In any case where the medical examiner, or physician acting as such, of any life insurance company or association doing business in the state shall issue a certificate of health or declare the applicant a fit subject for insurance, or so report to the company or association or its agent under the rules and regulations of such company or association, it shall be thereby estopped from setting up in defense of the action on such policy or certificate that the assured was not in the condition of health required by the policy at the time of the issuance or delivery thereof, unless the same was procured by or through the fraud or deceit of the assured."

This particular Code section has been commented upon in prior opinions of this court. In the case of Mickel v. Mutual Life Ins. Co., 204 Iowa 1266, 1270, 1271, 1272, 213 N. W. 765, 767, the only defense interposed by the defendant was that after the date of the medical examination and of the application by the assured, and after the date of the actual execution of the policy at the home office, and before the delivery thereof to the insured, the insured had become fatally ill, and that the delivery of the policy under such circumstances was ineffective, under the terms of the policy, to create an insurance contract. In this last-cited case this court said:

"The estoppel created by the statute is broad and sweeping, and in express terms includes both the time of *issuance* and the time of the *delivery* of the policy. * * *

"Two applicable and obvious legal rules may be briefly stated, as follows: (1) The legislature may, by proper enactment, make the report or certificate of the company's medical examiner to the effect that the applicant is a fit subject for insurance conclusive, and may deny the company the right to set up ill health on the part of the insured as a defense existing

at the time of such medical examination and the issuance of the policy, or at the time of the delivery thereof to the insured, even though the illness may have arisen prior or subsequent to the medical examination and the report of the examiner to the company; (2) that an insurance company may not contract with an applicant for insurance in disregard of such enactment, and bind him thereto.

"The provisions of the application relied upon as a defense in this case are not, per se, invalid, under Section 8770, Code of 1924; but, if the statute is applicable where the illness arose wholly subsequent to the date of the medical examination and report of the medical examiner, then they cease to be effective immediately upon the delivery of the policy and the acceptance thereof by the insured. It follows from what we have already said that an insurance company has a right to contract with an applicant that the policy shall not go into effect until delivery thereof to such applicant while he is in good health; but such provision is for the sole benefit of the insurer, and gives to it the option to refuse to deliver the policy to the applicant, if he is not at the time in good health. In other words, the insurer has the option of withholding the policy, in which event it would not go into effect, or of delivering it to the insured. If it accepts the latter alternative, the policy goes into effect at once, and the bar of the statute precludes the insurer from setting up the contract as a defense in an action thereon. The means of ascertaining the physical condition of the insured in this case were readily at hand on December 14th, when the policy was left at his place of business for him. * * *

"What we now hold in the case before us is that the delivery of the policy brought it under the operation of Section 8770, which in terms barred the defendant-company from predicating defense upon the condition of health of the insured 'at the time of the issuance or *delivery* thereof.' "

In the case of Equitable Life Ins. Co. v. Mann, 233 Iowa 293, 300, 7 N. W. 2d 566, 569, this court said:

"The applicability of Code section 8770 to an action in equity to cancel a policy was considered in Mutual L. Ins. Co.

v. Cunningham, 8 Cir., Iowa, 87 F. 2d 842, 845. The court there notes a seeming conflict between Nelson v. Nederland L. Ins. Co., 110 Iowa 600, 81 N. W. 807, and the later case of Mickel v. Mutual L. Ins. Co., supra:

" '* * * as to whether this statute goes merely to the remedy, as held in the Nelson Case,. or is a rule of substantive law passing into the contract, as held in the Mickel Case. If this conflict exists, we must accept the rule of the Mickel Case as being the latest pronouncement of the Supreme Court of the state. If this is the situation, the statutory provision becomes a part of the contract in the sense that the contract is governed thereby and United States courts acting in equity will enforce it. [Citing. authorities.]

" 'However, the above conflict may be more seeming than real when we give regard to the method and effect of the statute. The statute declares an ''estoppel'' in a certain fact situation. This estoppel is positive and not rebuttable. ' When the fact situation exists (as here), the statute exerts its full force and the provisions in the contract relating to innocent false statements in the application for insurance lose all influence whatever may be the fact as to the truth or falsity of such statements. Thus the effect of the statute is, in a practical sense, to change the contract while the method of bringing about that effect is through estoppel which is often regarded as remedial. This is that character of estoppel which is really ''a rule of substantive law masquerading as a rule of evidence.'' [Citing authorities.]' "

It is true that in the instant case there was no fraudulent misrepresentation as to the applicant's physical condition at the time of the medical examination for the insurance. The condition in the policy that it shall be in force only if on the date of its delivery ''the applicant has not consulted or been treated by any physician or practitioner since his .medical examination'' is a plain health provision similar to the provisions frequently found in policies that they shall not take effect unless delivered to the insured and the first premium paid while he is in ''good'' health or ''sound'' health. In the

Mickel case the provision was that the policy "shall not take effect unless and until the first premium shall have been paid during my continuance in good health, nor unless also the policy shall have been delivered to and received by me during my continuance in good health." We there held section 8770 applicable and that the company was precluded from questioning the effectiveness of the policy on the ground that the insured had contracted a fatal disease after the examination and before the delivery of the policy. We see no substantial difference between the two clauses. To hold otherwise would render the statute a nullity. The company's only interest in whether the insured visits a doctor or is treated by a doctor is the interest of the life insurer anxious to discover if the proposed insured is in good health. Surely, under the provision here, the insurer could not assert the policy would be ineffective if the visit to the doctor in the interval between application and delivery resulted in a diagnosis of sound health or if the visit was for a physical examination for another insurance policy. With our interpretation that the condition is a good-health or sound-health provision, then it clearly comes within the bar of the statute and it cannot be asserted here as a ground for cancellation.

As previously stated, it is the appellant's contention that section 8770 of the Code is not applicable to the situation presented in this appeal because of the provisions of the insurance contract. This contention cannot be sustained and, as stated in the quoted portion of the case of Mutual L. Ins. Co. v. Cunningham, 87 F. 2d 842, 845:

" * * * the effect of the statute is, in a practical sense, to change the contract while the method of bringing about that effect is through estoppel which is often regarded as remedial. This is that character of estoppel which is really 'a rule of substantive law masquerading as a rule of evidence.' "

By reason of the authorities we have herein referred to it is our conclusion that the appellant cannot interpose the provisions of the policy in an action of this character in the light of the statute to which reference has heretofore been made.

II. We have given consideration to the following cases

cited by the appellant which involve the particular provision of the policy which we have considered in the present case, namely: Jensen v. New York Life Ins. Co., 8 Cir., Neb., 59 F. 2d 957 [certiorari denied 287 U. S. 626, 53 S. Ct. 80, 77 L. Ed. 543]; Subar v. New York Life Ins. Co., 6 Cir., Mich., 60 F. 2d 239; New York Life Ins. Co. v. Gist, 9 Cir., Cal., 63 F. 2d 732 [certiorari denied 290 U. S. 651, 54 S. Ct. 68, 78 L. Ed. 564]; Hurt v. New York Life Ins. Co., 10 Cir., Kan., 51 F. 2d 936 [certiorari denied 285 U. S. 541, 52 S. Ct. 313, 76 L. Ed. 934]; Wilder v. New York Life Ins. Co., 7 Cir., Wis., 81 F. 2d 89; Combs v. Equitable Life Ins. Co., 4 Cir., Va., 120 F. 2d 432; New York Life Ins. Co. v. Gresham, 170 Miss. 211, 154 So. 547; Glickman v. New York Life Ins. Co., 291 N. Y. 45, 50 N. E. 2d 538, 148 A. L. R. 454; Polachek v. New York Life Ins. Co., 151 Misc. 172, 270 N. Y. Supp. 884, affirmed 243 App. Div. 692, 277 N. Y. Supp. 955.

A study of these cases discloses that in none of them was there a statute involved such as is found in the Iowa Code and to which we have referred. They cannot be held to be controlling in our consideration of the pending appeal.

By reason of our conclusions heretofore stated we hold that the contentions of the appellant cannot be sustained and that the trial court should be affirmed.—Affirmed.

HALE, C. J., and GARFIELD, OLIVER, MILLER, BLISS, and MULRONEY, JJ., concur.

SMITH and MANTZ, JJ., specially concur in result.

SMITH, J. (specially concurring in result)—I concur in the result reached by the majority opinion but do not think Code section 8770 applies. Appellant wrote into the application a warranty that the insurance was only to go into effect upon delivery of the policy and payment of first premium *"and then only if the applicant has not consulted or been treated by any physician or practitioner since his medical examination."* (Italics supplied.)

We have held that in absence of interdiction of statute an insurance company may exact warranties of fact thought

material. Graf v. Employers' Liability Assur. Corp., 190 Iowa 445, 448, 180 N. W. 297, and cases there cited.

The warranty here is not as to the condition of health of the applicant at the time of delivery of the policy. Appellant does not base its defense on the ground of applicant's condition of health at that time. We need not speculate as to the purpose or reasonableness of this particular warranty since its legality seems to have been upheld in many cases. See cases cited in Division II of the majority opinion. Appellant had an undoubted right to exact it and we must assume the applicant knew and understood the terms upon which he would become insured.

Code section 8770 by its very terms only estops the insurance company from setting up a defense based on applicant's *condition of health* at the time the policy is delivered. That is not appellant's defense here. Were this the whole record I would favor reversal.

However, appellee pleaded waiver by reason of the delivery of the policy and collection of the premium. Appellant contends, "The real issue is as to the agent's authority to waive the conditions of the contract."

The application provided that only certain officers of the appellant had authority to waive any of its rights and that "notice to or knowledge of the soliciting agent * * * is not notice to or knowledge of the Company."

The undisputed record here is that the policy was sent to one Carl W. Johnson for delivery and collection of premium; that accompanying it was a letter of instruction stating that "A policy must not be delivered (a) If any change whatever has occurred in the health or occupation of the applicant, or if he has consulted or been treated by a Physician since the date of his medical examination. In such case the agent must at once return the policy to his Branch Office with full particulars and await further instructions."

Mr. Johnson was the soliciting agent who had solicited the application. By direction of the applicant he delivered the policy to applicant's brother and collected from the brother the balance due on the premium. The brother informed Johnson at the time of delivery that applicant was sick, in a hospital, and had been operated on for appendicitis. Neither the applicant

nor his brother had any knowledge of the contents of the letter of instruction to Johnson.

There is no doubt that a company may by its conduct waive or estop itself from claiming the benefit of breaches of warranties and conditions in respect to prior consultations with or treatment by physicians. 37 C. J. 526, 527, section 260, note 31; Couch on Insurance, section 130b. May it not also waive provisions which are designed to limit to certain designated representatives the authority to waive grounds of avoidance of liability?

It may be admitted that courts are not in agreement on this last proposition. See 32 C. J. 1318 et seq., section 570; 29 Am. Jur. 620, section 816; Couch on Insurance, section 522 et seq. But from a comparatively early day this court has been committed to the doctrine that such restrictions may themselves be waived. Viele v. Germania Ins. Co., 26 Iowa 9, 54, 96 Am. Dec. 83; Young v. Hartford Fire Ins. Co., 45 Iowa 377, 380, 381, 24 Am. Rep. 784; Ruthven Bros. v. American Ins. Co., 102 Iowa 550, 558 et seq., 71 N. W. 574; Lutz v. Anchor Fire Ins. Co., 120 Iowa 136, 138, 94 N. W. 274, 98 Am. St. Rep. 349; Black v. Grain Shippers Mut. F. Ins. Co., 171 Iowa 309, 314, 152 N. W. 7.

When this policy was sent to Johnson for delivery and collection of premium he became more than a mere soliciting agent. He was designated to complete the transaction with the applicant. He was clothed with the responsibility of ascertaining whether certain facts existed that might hinder or prevent putting the contract into effect.

He was frankly told the facts. There was no concealment, no bad faith. The premium was paid to and the policy delivered by him as the only representative of appellant available to the applicant. The applicant had no knowledge of any secret instructions limiting Johnson's authority in the transaction.

In creating this situation appellant, I think, must be held to have waived the conditions written into the application. In Lutz v. Anchor Fire Ins. Co., supra, we said at page 138 of 120 Iowa, page 275 of 94 N. W.: " * * * it was not within the realm of legal possibilities that it [the company] should divest itself of all capacity to waive any contract right it possessed,

*or should so limit the manner and form in which a waiver may be expressed that such limitation itself might not be waived."* (Italics supplied.)

We have said: " * * * a nonwaiver clause is no more sacred than any other condition and may be waived by the company." Henderson v. Standard Fire Ins. Co., 143 Iowa 572, 576, 121 N. W. 714, 715.

Acting for the appellant within the scope of his apparent authority, with full knowledge of the facts, the agent, by accepting the premium and delivering the policy, waived the condition upon which the defense here is based and estopped appellant from asserting it. Upon this consideration I think the decision of the trial court should be affirmed.

MANTZ, J., joins in this special concurrence.