### McNABB
#### v.
### STATE FARM LIFE INS. CO.
### Civ. No. 1–43.

United States District Court
S. D. Iowa, Ottumwa Division.
Nov. 14, 1953.

Joe W. Griffin, Ottumwa, Iowa, and Thomas J. Bray, Oskaloosa, Iowa, for plaintiff.

Merrill C. Gilmore, Wilbur R. Dull, Ottumwa, Iowa, and Allan C. Herrick, Herschel G. Langdon, Ross H. Sidney, Robert L. Sandblom, Des Moines, Iowa, for defendant.

RILEY, District Judge.

By a policy dated June 23, 1951, the defendant insured the life of Earl E. McNabb, age forty-one, for $5,000, and

agreed to pay that amount as a death benefit to plaintiff, his wife, as the named beneficiary; otherwise, to their children. Earl E. McNabb died December 17, 1952, the defendant refused to perform and the beneficiary brings this action to compel defendant to pay.

The defendant declined to pay the amount of the insurance and tendered to plaintiff the premiums paid to it, because of claimed material false statements and representations by the applicant and intentional, willful concealment of his true condition of health from defendant's medical examiner and the latter's reliance thereon. Defendant pleaded a rescission and denied all liability. The tender was kept good by paying into the registry of the court the amount of the premiums received by defendant from the insured.

The policy is dated June 23, 1951, but the medical examination of the insured by the defendant's medical examiner at Ottumwa, Iowa, was on June 28, 1951. The medical examiner's report, in evidence as defendant's Exhibit 1, bears the same date.

The court finds from the record, and particularly from the testimony of the defendant's medical examiner, Dr. Lawrence Nelson, that the required physical examination was made, that the medical examiner took and recorded the answers to the questions in the medical history, and wrote into the medical examiner's report the information furnished to him by the applicant. Among other things in Exhibit 1 are the following questions and the answers given to the examining physician and entered by him in the original medical history:

"14. (d) Has Proposed Insured ever been under observation, care, or treatment in any hospital, sanitarium, asylum, or similar institution? No

Yes or No"

"19. Has Proposed Insured lost any time from work during the past 3 years on account of illness or injury? (If so, explain) No

Yes or No"

"21. (a) Name and address of physician Proposed Insured usually consults: D. G. Emanuel, M. D., Ottumwa, Iowa."

"21. (b) When and for *what* did Proposed Insured last consult him? 1949—sebaceous cyst removed, shoulder right."

"25. Has a physician, specialist or other practitioner been consulted by or for the Proposed Insured, or has the Proposed Insured been under medical care, in the past 10 years? Yes (If so, give

Yes or No

details below)

| Disease, Injury or Other Reasons | Date— Month and Year | Complications | Duration and Date of Recovery | Remaining Effects | Medical Attendant's Name and Address |
|---|---|---|---|---|---|
| Sebaceous cyst on right shoulder | 1949 | none | 1–2 yrs. Removed by simple excision in office | none | D. G. Emanuel, M. D. Ottumwa, Iowa |
| Inguinal Hernia left | 1928 | none | 1–2 yrs. | none | operation E. B. Howell, M. D. Ottumwa, Iowa" |

In the medical examiner's report, signed by Dr. Nelson, on the reverse side of Exhibit 1 were the following questions and answers:

"11. (a) Are you satisfied as to Proposed Insured's identity, and the substantial correctness of all answers? Yes.

"(a) Are there any conditions, even slight, not herein stated, which might have an effect upon the insurability of the risk? No.

"(f) Do you unreservedly recommend this Proposed Insured as a first-class, average, or fair risk? Yes. (If other than first-class, give reasons)"

The evidence is uncontradicted that prior to giving the answers quoted above and furnishing to the medical examiner the information recorded by him, the applicant had been from his entrance on December 24, 1948, to his discharge on January 20, 1949, a patient at Retreat Hospital, Des Moines, Iowa, a hospital for the care and treatment of mental illness, and that while there the applicant was given six electric shock treatments as a part of his treatment. The hospital record, which was in evidence, contained these statements, among others:

"Insight and Judgment: Patient shows good insight into his condition. He realizes that he is sick and that he needs help. His judgment is good, considering his illness."

"Summary

"This is a white male age thirty-eight who has no history of previous attack. This illness is of approximately one to two months duration, characterized by a progressive development of depression, retardation, ideas of self-condemnation, and indefinite suicidal ideas. He has good insight and good judgment into his condition."

The discharge note contains the statement: "Manic depressive psychosis, depressed type." The fact of this illness, diagnosis, confinement, care and treatment was never disclosed, but was concealed by the applicant from the defendant's medical examiner. The examining physician testified, over objection, that at the time he recommended the applicant as a fit subject of life insurance he was deceived or misled. The testimony of the medical examiner was to the effect that he relied on the truth of the statements made to him by the applicant at the time he filled in the medical history. He testified that if he had known these matters not disclosed, he would not have recommended the applicant for insurance, nor would he have considered the applicant a fit subject for life insurance.

The law of Iowa is controlling in the situation here presented. The Iowa statute, Sec. 511.31 of the Code of Iowa 1950, I.C.A. (formerly Sec. 8770 of the Code of Iowa 1939), and upon which the defendant does and must rely for its defense, is discussed in Equitable Life Ins. Co. v. Mann, 233 Iowa 293, at page 295, 7 N.W.2d 566, at page 567, where the court said:

"Section 8770, Code of Iowa, 1939, provides that in any case where a medical examiner or physician of any life insurance company shall issue a certificate of health or declare the applicant a fit subject for insurance, or so report to the company, 'it shall be thereby estopped from setting up in defense of the action on such policy or certificate that the assured was not in the condition of health required by the policy at the time of the issuance or delivery thereof, unless the same was procured by or through the fraud or deceit of the assured.'

"We have frequently held that to establish the affirmative defense of fraud required by this section, the proof must be clear, satisfactory and convincing, and must show (1) a material representation of an existing fact, (2) its falsity, (3) scienter, (4) intent that it be relied upon, (5) that the examining physician relied and acted thereon, and (6) that the company was

thereby defrauded." (Citing cases.)

Here the court must consider that the elements of proof described in the foregoing quotation have been satisfactorily established by the evidence in a manner that is clear, satisfactory and convincing to the court.

In the later case of New York Life Ins. Co. v. Hesseling, 236 Iowa 412, at page 418, 19 N.W.2d 191, at page 193, where the defense of fraud under Sec. 8770 was denied, the court expressly said in the opinion: "in the instant case there was no fraudulent misrepresentation as to the applicant's physical condition at the time of the medical examination for the insurance."

In Olson v. New York Life Ins. Co., 229 Iowa 1073, at page 1078, 295 N.W. 833, at page 836, the court again said:

"We do not think these circumstances constitute substantial proof that the certificate of health was procured by fraud of the applicant. * * *

"We have repeatedly held that the provisions of Code Section 8770 apply to answers made by the applicant concerning his health or medical history. (Citing cases.)

"* * * But in the case at bar the doctor, who was a witness for appellant (defendant), gave no testimony which would warrant any inference that he relied upon or was deceived by applicant's allegedly fraudulent answers."

In the case at bar there was positive evidence of such reliance and deception.

In Boos v. Mutual Life Ins. Co., 205 Iowa 653, 216 N.W. 50, 51, it was said that it is not sufficient to avoid the policy, that the answers to the questions stated were false and known by the applicant to be false, but that "The additional element that the examining physician was deceived and misled thereby and induced to issue the certificate in reliance upon the answers to the questions as set forth in the application must be established." In is said in 205 Iowa at page 655, 216 N.W. at page 51:

"The question is not, therefore, whether, if true answers had been made to the questions, a policy would have been issued by the company. It might, or might not, with full information have accepted the risk. The inquiry at this point is limited to the effect of the false statements upon the examining physician in determining and ascertaining the state of health of the applicant. Was he misled and deceived thereby and induced to issue a certificate of health when, had he been apprised of the facts, he would not have done so? This question must be answered by the testimony of the physician himself."

The court must find that in the case at bar this question has been so answered and the examining physician was so misled and deceived.

When the Supreme Court had before it the matter of the cancellation of the disability and double indemnity benefits of a policy because of a reservation of right where the issuance of the policy was procured by fraud, the Supreme Court of Iowa, in sustaining the action of the trial court cancelling those portions of the policy, said in New York Life Ins. Co. v. Rotman, 231 Iowa 1249, at page 1255, 3 N.W.2d 603, at page 606:

"Said false statements, which concerned material matters, were believed and relied upon by the examining doctor and the insurance company and induced the issuance of the policy. Insured denied the statements were fraudulent and offered the excuse that when he made the application he had forgotten the ailments and treatments. The trial court held the statements were fraudulent. We agree with this holding. The decree cancelling the disability and double indemnity benefits of the policy is affirmed."

Upon the entire record the court finds that the false statements quoted in this

memorandum were fraudulently made, concerned material matters, that they were believed and relied upon by defendant's examining physician and the defendant and induced the issuance of the policy in suit.

By an amendment, plaintiff asserted: (a) that the defendant's attempted payment to plaintiff of the premiums paid by the insured was a recognition of the validity of the policy and operated to waive any and every defense thereto; and (b) that Section 511.33 of the Code of Iowa 1950, I.C.A., was violated by defendant's failure to attach to the policy a true copy of the application in that the copy attached is "not legible to the normal eye," that such failure effects a waiver of the right to interpose any defense based on misrepresentation or fraud and accomplished, with the acceptance and retention of premiums, an estoppel as to the defenses of misrepresentation, concealment or fraud.

The statute relied upon and the next section provide in their parts here material:

"511.33 *Application for insurance—duty to attach to policy.* All life insurance companies or associations organized or doing business in this state under the provisions of the preceding chapters shall, upon the issue of any policy, attach to such policy, or indorse thereon, a true copy of any application or representation of the assured which by the terms of such policy are made a part thereof, or of the contract of insurance, or referred to therein, or which may in any manner affect the validity of such policy * * *."

"511.34 *Failure to attach—defenses—estoppel.* The omission so to do shall not render the policy invalid, but if any company or association neglects to comply with the requirements of section 511.33, it shall forever be precluded from pleading, alleging, or proving such application or representations, or any part thereof, or the falsity thereof, or any part thereof, in any action upon such policy * * *."

As to the requirements of Section 511.33 the court must find from an examination of the copy of the application attached to the policy in suit that it is capable of being read by a person of normal vision. It may be remarked parenthetically that plaintiff's counsel may have been misled by the fact that the photostatic copy attached to plaintiff's complaint is not readily legible. However, it is a photostatic copy of a photostatic copy, in contradistinction to the photostatic copy of the original attached to the policy itself. The latter is a photostatic copy of the original "application or representation of the assured" and is readily legible. The court finds that the policy meets the requirements of Section 511.33 and the company is not precluded by Section 511.34 from pleading, alleging or proving the falsity of the application or representations.

The decision which the court believes to be correct under the record made here makes the amount of returned premiums available for distribution to whoever may be entitled to receive it. It is recommended that plaintiff and defendant agree between themselves as to whom properly the Clerk may make payment.

The findings of fact and conclusions of law contained in this memorandum are adopted consonant with Rule 52 of the Federal Rules of Civil Procedure, 28 U. S.C.A.

The Clerk will enter the following order and judgment:

### Order and Judgment

The above cause having been fully tried to the court on October 21 and 22, 1953, and after oral argument duly submitted to the court on October 22, 1953, and after due consideration thereof, the court now finds the issues for the defendant.

It is therefore ordered and adjudged that plaintiff's complaint be and is hereby dismissed with prejudice, that the amount paid by defendant into the reg-

istry of the court shall be paid by the Clerk to plaintiff or such other as the parties may in writing agree, and that the costs be taxed to plaintiff. Plaintiff excepts.